Nash, C. J.
 

 The prisoner was convicted of the murder of one Allen Green. By his counsel,’ the prisoner moved for a new trial, upon several grounds, which we will consider in their order.
 

 First, that one of' the jurors of the panel was not a slave-owner. This objection, if taken at the proper time, would have been allowed. Rev. Code, ch. 107, sec. 34. The same section provides, that the Superior Courts shall have exclusive original jurisdiction of all felonies and other offences, committed by slaves, &c.,
 
 “
 
 and the trials shall be conducted in like manner as the trials of free men, for the same offences.” The slave stands at the bar, clothed with the same privileges that the white man enjoys, and the trial is conducted by the
 
 *447
 
 same rules. Every criminal, charged with a crime affecting his life, has a right to challenge a certain number of jurors, without assigning any cause, and as many more as he can assign a good cause for. In all legal proceedings there is an apt time for every step in the proceeding, and every objection or privilege must be made or claimed at the proper time, or the party making it will be considered as having waived it.
 
 Briggs
 
 v. Byrd,
 
 12
 
 Ire. Rep. 382. The time for a prisoner to make his challenge, is when the juror is tendered, and before the juror is sworn, or the oath is commenced.
 
 Joy
 
 on Jurors, 219. The right to be tried by the owner of slaves is a privilege accorded to the slave; but it is a privilege he may waive; and having failed to make his objection at the proper time, he comes too late after verdict. To enable the prisoner to make his challenges intelligently, the Clerk is required to road over the names of the jurors on the panel, in the presence and hearing of the defendants and their counsel, before the jury shall be empannelled to try the issue. Eev. Code, ch. 3o, sec. 32.
 

 The
 
 second,
 
 exception cannot avail the prisoner. The same section of ch. 35, limits the right of peremptory challenge to twenty-three, when the prisoner is on trial for his life, whether bond or free.
 

 The
 
 third
 
 exception is to the rejection of the declarations of the deceased man Green, as to his fears of Fornes. We cannot perceive upon what principle of law those declarations could have been received. The Court committed no error in rejecting them.
 
 State
 
 v. Duncan, 6 Ire. Rep. 236.
 

 The
 
 fifth
 
 exception is to the refusal of the Court to give the instructions to the jury as prayed for. The presiding Judge refused to give the instructions “as asked.” He then gave the instructions which the law required him to give, substantially that which was asked. In this there was no error.
 

 Thefourth
 
 exception is the important one. The admissions of a party against his interest, are considered as strong evidence, and are competent in general. In criminal cases, how-
 
 *448
 
 over, tliey must come from the accused voluntarily, and free from all fear or hope impressed upon him by others.
 

 In this case, the witness Yen tres states, that the morning after the homicide he went to the place where the body was found, and discovered a plain track near by, a little way from the path. There was the print of a half-sole, with the distinct impression of the tacks all around. The morning after the prisoner was arrested, the witness, in whose custody he was, took him to the place -where the body was found, and, upon applying one of his boots to the track, it seemed to fit precisely ; when he observed to the prisoner, “ you might as well tell all about it,
 
 for 1 am
 
 satisfied.” Patrick denied it, and witness, being a little angry, said to him, “if you belonged to mo I would make-you tell.” The prisoner still denied it, and they went back to the house of the witness to get their breakfast. After breakfast the witness went to the house of Patrick’s wife, wrhere he was when prisoner asked him if he ever knew him to tell a lie. He answered, “ no, not about your work.” Patrick then said, “are you afraid to go with me.” lie said, “ no.” They walked out together, Patrick’s hands being tied, and when they came to a fence, a short distance off, witness stopped ; at the suggestion of the prisoner, they crossed the fence and sat down upon a log, when he made the confessions given in evidence.
 

 Baron Eyre, in
 
 Rex
 
 v. Hearne, 4 Car. and Payne, 215, (19 E. C. L. Rep. 850,) observes, a free and voluntary confession is deserving of the highest credit, because it is presumed to flow from the strongest sense of guilt, and, therefore, it is admitted as proof of the crime to which it refers; but a confession wrung from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape that no credit ought to be given to it. The material enquiry, therefore, always, in such cases, is, has the confession been obtained by the influence of hope or fear, applied by a third person to the prisoner’s mind ? This enquiry is, in its nature, preliminary, and is addressed to the Judge, who admits the confession to the jury, or not, as he may find it to have been drawn from
 
 *449
 
 the prisoner by these motives. Ilis Honor admitted the evidence in this case, and in so doing committed no error; no influence of hope or fear could have been impressed on the prisoner’s mind by the remarks of the witness, and no hope, that, by confession, he would better his position, but simply that by measuring the track with the boot of the prisoner, the witness was satisfied of his guilt, and that his confession would not add to his belief; confess or not, as you please, I am satisfied. This certainly held out to the prisoner no hope that, by confession, his situation would, in any respect, bo bettered. So, neither w'ero his fears excited that his sufferings would bo increased by not confessing. The expression used by the witness, “if you belonged to me I would make you tell,” carried with it the assurance that the witness would inflict no suffering upon him. Many cases are contained in our reports upon this rule of the criminal law; many of them irreconcilable with the principle announced by Baron Eyre, in the case cited, pressing the principle of exclusion too far, and applied when there could be no reason to believe that the inducement had any influence on the mind of the prisoner, and, thereby, occasioned the escape of many criminals.
 
 JPMUps
 
 on Ev. 424;
 
 Joy
 
 on Jurors, 21.
 

 It seems now to be settled law upon this point, if the prisoner has made his own calculations of the advantages to be derived from confessing, and thereupon has confessed the crime, there is no reason to say it is not a voluntary confession. In order to exclude a confession, the motive of hope or fear must be directly applied by a third person, and must be sufficient, in the judgment of the Court, so far to overcome the mind of the prisoner as to render the confession unworthy of credit.
 
 Greenleaf
 
 on evidence, 279, N. 5. In the
 
 State
 
 v.
 
 Cowan,
 
 7 Ire. Rep. 239, the words used by the magistrate were, “ unless you can account for the manner in which you became possessed of the watch, I shall be obliged to commit you to be tried for stealing it.” The Court held that these words did not amount to such a threat or influence as would prevent the introduction of the subsequent confession. Here
 
 *450
 
 the prisoner seems to have made his own calculations. He appealed to the witness as to his character for truth, invites him to take a walk with him, and then deliberately makes the confession.
 

 There is no error in receiving them.
 

 Per Curiam.
 

 Judgment affirmed.