## STATE v. JOHN ROBERT MYERS.

(Filed 9 March, 1932.)

1. **Criminal Law G 1—Confession in this case held properly admitted in evidence.**

   The prisoner, held for murder, at first denied guilt and stated that at the time the crime was committed he was riding in an automobile with two other men. Upon a search of his home by an officer certain articles connected with the crime were discovered, whereupon the prisoner told the officers where the pistol with which the crime had been committed could be found and confessed to the murder of the deceased. The officer to whom the prisoner confessed testified that he neither threatened the prisoner nor offered him any hope of reward but that he told the prisoner he had better tell the names of the two men with whom he said he was riding at the time of the crime so that they might be apprehended, and the prisoner's brother suggested that "he had better go on and tell the truth": *Held,* the statements, under the circumstances, were not an inducement for the prisoner to confess, and the admission of the confession in evidence was not error.

2. **Criminal Law I 1—Where all evidence shows that crime was first-degree murder failure to instruct as to less degrees is not error.**

   Where upon a trial for murder all the evidence and inferences therefrom unquestionably tend to show that the deceased was killed by one lying in wait and for the purpose of robbery, with evidence tending to establish that the defendant had perpetrated the crime, and there is no evidence in mitigation of the offense, the evidence establishes the crime of murder in the first degree, C. S., 4200, and an instruction to the jury either to convict the defendant of murder in the first degree, if the evidence so satisfied them beyond a reasonable doubt, or to acquit the defendant is not error.

APPEAL by prisoner from *Cranmer, J.,* at January Term, 1932, of PITT. No error.

The prisoner was indicted for the murder of R. H. Hodges and was convicted of murder in the first degree. From a judgment of death by electrocution he appealed, assigning error.

The deceased was mortally wounded at night while on his way home from his store and died a few days afterwards.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*J. C. Lanier for prisoner.*

ADAMS, J. The prisoner neither testified nor offered witnesses in his behalf. His right to remain silent and to rely on what he deemed the insufficiency of the evidence against him was explained and safeguarded by the court's instruction to the jury.

The State's evidence reveals a confession made by the prisoner under the following circumstances: He was at the police station under arrest. He was told by the sheriff that he did not have to answer any questions, to do anything or to tell anything, and that what he said would be used against him. The witness testified that he made no threat, offered no reward, held out no hope of reward, and that the prisoner's statement was voluntary. At first· the prisoner denied any connection with the homicide and said that when it occurred he and two other Negroes had gone in a Ford car across the river and down the creek. A few minutes afterwards the sheriff and the prisoner's brother went to the prisoner's house, searched it, and found a coat and a toboggan. Upon their return to the police station the prisoner told them "where to find the gun." In the second search they found two pistols and a bunch of keys. Another search discovered a flashlight. Meantime the prisoner had made a confession to the chief of police. This officer testified that he neither threatened the accused nor offered him any hope, nor suggested that it would be better for him to make a statement. Returning to the station, the sheriff asked the prisoner to repeat his statement. Admitting that he had stolen the pistols he pointed out the one with which the deceased had been killed. When the pistols were shown him and the keys, which belonged to the deceased, he said, "I did it," and related what he had done. On the night of the homicide he stole an Essex car, drove it to Pactolus, and parked it near his victim's place of business. He went into the store and said something about a pair of shoes, but made no purchase. He left the store, went to a lane near the home of the deceased, and there lay in wait. When the deceased came along the prisoner stopped him and demanded his money. He "emptied his pistol at Hodges," caught him, and took his money, his keys, a flashlight, and some papers. He returned to the car and took the shells from the pistol. Unable to start the car, he left it and walked back towards Greenville.

When, in his previous statement, he claimed that two other men were with him the chief of police remarked "You had better tell who it was

so we can get the other men"; and the prisoner's brother suggested that "he had better go on and tell the truth."

The exception to the admission of this evidence must be overruled. The conditions under which a confession should be admitted or excluded are pointed out in a number of our decisions. It should be excluded if it was "wrung from the mind by the flattery of hope or by the torture of fear"; by "some advantageous offer or by threats or actual force"; by the fear of punishment or the hope of escape. *S. v. Patrick,* 48 N. C., 443; *S. v. Graham,* 74 N. C., 646; *S. v. Sanders,* 84 N. C., 729; *S. v. Whitfield,* 109 N. C., 876; *S. v. Rodman,* 188 N. C., 720; *S. v. Fox,* 197 N. C., 478.

The confession in evidence was not made under the impulsion of hope or fear. The suggestion that the accused had better tell who the "other men" were or that he "had better go on and tell the truth" has no element of unlawful inducement. As said in *S. v. Harrison,* 115 N. C., 706, "The rule which is generally approved is, that where the prisoner is advised to tell nothing but the truth, or even when what is said to him has no tendency to induce him to make an untrue statement, his confession in either case is admissible." No promise was made to induce the confession, no threat was used to extort it. *S. v. Bohanon,* 142 N. C., 695.

The trial judge instructed the jury to return one of two verdicts: an acquittal or a conviction of murder in the first degree. It is contended that the jury should have been permitted to return a verdict for murder in the second degree.

The statute provides that any murder which shall be perpetrated by lying in wait  .  .  .  or shall be committed in the perpetration of or in the attempt to perpetrate robbery shall be deemed to be murder in the first degree. C. S., 4200. All the evidence tends unquestionably to establish these two elements. The prisoner waylaid the deceased, shot five times, inflicted a mortal wound, pursued the deceased, and robbed him of his property. By the terms of the statute he was guilty of murder in the first degree, or not guilty. In *S. v. Spivey,* 151 N. C., 676, 685, the rule is stated as follows: "Where the evidence tends to prove that a murder was done, and that it was done by means of poison, lying in wait, imprisonment, starving, torture, or which has been committed in perpetration or attempt to perpetrate any arson, rape, robbery, burglary or other felony, and where there is no evidence and where no inference can fairly be deduced from the evidence of or tending to prove a murder in the second degree or manslaughter, the trial judge should instruct the jury that it is their duty to render a verdict of 'guilty of murder in the first degree,' if they are satisfied beyond a reasonable

doubt, or of 'not guilty.'" *S. v. Rose,* 129 N. C., 575; *S. v. Dixon,* 131 N. C., 808; *S. v. Newsome,* 195 N. C., 552; *S. v. Sterling,* 200 N. C., 18, 23. The authorities have recently been reviewed and the principle upheld in *S. v. Smith,* 201 N. C., 494. We find

No error.