Criminal prosecution on indictment charging the defendants with rape.
The evidence for the State tends to show that on the night of 17 March, 1946, around the hour of midnight, the defendants severally had sexual intercourse with the prosecuting witness, Mrs. Dorothy Lou Fry, who testified: "I did not object to the intercourse these defendants had with me because I was so frightened, I was afraid they would kill me; it was against my wishes and against my will. . . . I did not consent; I used as much force as I could to keep them from having sexual intercourse with me."
Three of the defendants, Granger Thompson, Stacy Powell and Calvin Covington, admitted having to do with the prosecutrix, but contended that it was commercialized, vice, or prostitution, and that the prosecutrix complained only upon their failure to pay the stipulated price. The defendant, Cliff Inman, denied having anything to do with the prosecutrix, and pleaded an alibi. *Page 21 
The prosecutrix is a white woman, married and the mother of three children. She accompanied Frank Straughan, a white man, also married but not her husband, into the colored section of the Town of Lumberton on Sunday night in order that he might get a drink of whiskey. They were not strangers to that portion of the town. The defendants are Negroes.
Straughan's car was stopped in the dark near Granger Thompson's house, and would not start again under its own battery. Straughan asked the defendants to push his car, which they did, even to pushing it into the ditch, but were unable to start it. The defendants "went off and talked awhile" and then Inman suggested that he would go down the road and get a chain, if Straughan would go with him, so as to move the car by tying it to his own car. He would not go alone. While Straughan and Inman were gone to get the chain, the other defendants, accompanied or forcibly took the prosecutrix to an unfinished house about a block away and there had intercourse with her, Thompson first, Powell second, and Covington third. In the meantime, Inman had returned, helped Straughan start his car, went to the unfinished house, and the prosecutrix says: "While Covington was having intercourse with me, Inman came to the door and Inman had sexual intercourse with me after Covington did." Straughan drove back to town looking for the prosecutrix, and the prosecutrix says Inman carried her home in his Ford car. Inman testified that he took the chain back, after helping Straughan start his car, and then went to his home.
Three of the defendants, Thompson, Powell and Covington, were arrested that night and brought to Raleigh early Monday morning and lodged in the State's Prison for safekeeping. Covington made several statements to the officers in the nature of confessions before leaving Lumberton, and repeated them in the presence of Thompson and Powell in the jail at Lumberton and again a day or two later in the State's Prison at Raleigh.
Immediately upon his arrest by officers Stanley Hardee and Cliff Britt, and again while going to police headquarters in Lumberton, Covington declared he wanted to tell the truth about the matter. Officer Hardee said to him, "It would be better to go on and tell us the truth than try to lie about it. . . . I told him it would be better to come on and tell the truth." Covington told them that Thompson and Powell forcibly took the prosecutrix from the Straughan car and carried her to the unfinished house. That he went along. All had connection with her.
Later, in the presence of Thompson and Powell in the State's Prison at Raleigh, Covington repeated his inculpatory statements, and Thompson and Powell also confessed to ravishing the prosecutrix. In consequence of Thompson's statement. Cliff Inman was arrested and brought to Raleigh. The other defendants then repeated their statements in the *Page 22 
presence of Inman, to which Inman replied: "I didn't have anything to do with it. I went and got a chain."
Upon the trial, the three defendants, Thompson, Powell and Covington, repudiated their confessions and sought to have them excluded on the ground that they were involuntary. The judge heard the evidence, pro and con, and admitted them as voluntary statements in the nature of confessions. The testimony of the defendants and that of the sheriff and the arresting officers was in sharp conflict as to the treatment accorded the defendants while they were under arrest and before any statements were made. The officers at the State's Prison testified that upon their arrival there the defendants showed no signs of ill treatment such as they contended they were subjected to, both in Lumberton and on their way to Raleigh.
Verdict: Guilty of the crime of rape as to each of the defendants.
Judgment: Death by asphyxiation as to all four of the defendants.
The defendants appeal, assigning errors.
We have here for determination (1) the sufficiency of the evidence to carry the cases to the jury, (2) the competency of evidence, particularly the confessions, and (3) the adequacy and correctness of the charge.
I. THE CASES AGAINST THOMPSON, POWELL AND COVINGTON:
Specifically, the question posed by the demurrers is whether the evidence permits the inference that sufficient "force" was used to constitute rape. The prosecution says, "Yes"; the defendants say, "No." Carnal knowledge of the prosecutrix by three of the defendants is admitted. If such knowledge were attained "forcibly and against her will," it was rape; otherwise not. S. v. Johnson, 226 N.C. 671; S. c., ibid., 266, and cases there cited. We think the issue was one for the twelve. True, the prosecutrix unwittingly says she did not "object to the intercourse" which the defendants had with her, but this was predicated upon the reason stated that she feared for her life, and "it was against my wishes and against my will." She further says: "I did not consent; I used as much force as I could to keep them from having sexual intercourse with me." It is conceded that the "force" necessary to constitute rape, need *Page 23 
not be actual physical force. 52 C. J., 1024. Fear, fright, or coercion, may take the place of force. 44 Am. Jur., 903.
In considering the demurrers to the evidence, we are not concerned with the weight of the testimony, or with its truth or falsity, but only with its sufficiency to carry the cases to the jury and to sustain the indictment. S. v. Vincent, 222 N.C. 543, 23 S.E.2d 832; S. v. Smith,221 N.C. 400, 20 S.E.2d 360; S. v. Rountree, 181 N.C. 535,106 S.E. 669. And in passing upon this question it is not to be overlooked that the State is entitled to the benefit of every fact and inference of fact pertaining to the matters involved which may reasonably be deduced from the evidence. S. v. Stephenson,218 N.C. 258, 10 S.E.2d 819; S. v. Carr, 196 N.C. 129, 144 S.E. 698. "The practice is now so firmly established as to admit of no questioning that, on a motion to nonsuit, the evidence is to be considered in its most favorable light for the prosecution." S. v.Beal, 199 N.C. 278, 154 S.E. 604. Viewed in this wise, we conclude that the demurrers were properly overruled. Even equivocation on the part of the prosecutrix, if such there were, which is unconceded, would not take the case from the jury, Ward v. Smith, 223, N.C. 141,25 S.E.2d 463; Bank v. Ins. Co., 223 N.C. 390, 26 S.E.2d 862; Shellv. Roseman, 155 N.C. 90, 71 S.E. 86.
The three defendants who made statements to the officers in the nature of confessions stressfully contend that these confessions were erroneously admitted in evidence, because they say, the statements were (1) extracted by fear, or (2) induced by hope. The first reason assigned is untenable in the light of the record; the second may require some analysis.
1. The allegation that the confessions were provoked by assaults, beatings and ill treatment on the part of the officers, while the defendants were in their custody, was fully investigated by the trial court, as was his duty under the law. S. v. Brooks, 225 N.C. 662,36 S.E.2d 238. The testimony of the defendants in this respect was categorically denied by the officers who had them in charge. Likewise, the officers at the State's Prison testified that upon their arrival there, the defendants showed no signs of having been assaulted or mistreated. On this conflict of evidence, the trial court found that the allegation of extortion of the confessions by threats and violence was without foundation in fact. The conclusion is definitive under our practice. S. v. Lord, 225, N.C. 354, 34 S.E.2d 205; S. v. Biggs, 224 N.C. 23,29 S.E.2d 121, and cases there cited.
2. The allegation that the confessions were induced by the flattery of hope, presents a different question. Anno. 7 A.L.R., 423. There is no conflict in the evidence on this point. The officers themselves testify that they told Covington, "It would be better to go on and tell us the truth than try to lie about it. . . .; it would be better to come on and *Page 24 
tell the truth." These admonitions, however, were given after Covington had expressed a desire to tell the truth about the matter, and apparently in response to such declaration or expression.
It will be noted the suggestion made by the officers was, that Covington "tell us the truth," or "come on and tell the truth," not that he confess his guilt, such as appeared in the cases of S. v. Anderson, 208 N.C. 771,182 S.E. 643, and S. v. Livingston, 202 N.C. 809, 164 S.E. 337, which are cited and relied upon by the defendants as authorities for their position here. The rule generally approved is, that "where the prisoner is advised to tell nothing but the truth, or even when what is said to him has no tendency to induce him to make an untrue statement, his confession, in either case, is admissible." S. v. Harrison, 115 N.C. 706, 20 S.E. 175;S. v. Myers, 202 N.C. 351, 162 S.E. 764; S. v. Moore, 210 N.C. 686,188 S.E. 421; S. v. Bohanon, 142 N.C. 695, 55 S.E. 797; S. v.Caldwell, 212 N.C. 484, 193 S.E. 716; S. v. Gee Jon, 46 Nev. 418,211 P. 676, 30 A.L.R., 1443.
Tested by the above standard and the rationale of the decided cases, the impression is gained that the ruling of the trial court is in line with the authoritative decisions on the subject. The circumstances of the present record appear to be without exact parallel in any of the cases examined. See Anno. 24 A.L.R., 703. We cannot say as a matter of law that the confessions were made under the impulsion of hope. S. v. Myers, supra. No promise of escape or lighter sentence was suggested or held out by the officers to induce them. S. v. Bohanon, supra. The defendants were advised to tell nothing but the truth. That such "would be better for them" accords with the teachings of experience that "open and frank responses by innocent persons arrested under misapprehension are generally powerful aids in securing their prompt discharge from custody." S. v. Grass, 223 N.C. 31,25 S.E.2d 193; S. v. Oxendine, 223 N.C. 659, 27 S.E.2d 814. Moreover, the confessions were repeated several days later, far removed from the local scene, and under circumstances quite different from those obtaining when the defendants were first arrested. S. v. Moore, supra;White v. State, 129 Miss. 182, 91 So. 903, 24 A.L.R., 699.
It all comes to this: Confessions are either voluntary or involuntary. A voluntary confession is admissible in evidence against the party making it; an involuntary one is not. 22 C. J. S., 1424. A confession is voluntary in law when — and only when — it was in fact voluntarily made. S.v. Newsome, 195 N.C. 552, 143 S.E. 187; S. v. Patrick, 48 N.C. 443;S. v. Roberts, 12 N.C. 259. "Confessions are to be taken as prima facie
voluntary, and admissible in evidence, unless the party against whom they are offered allege and show facts authorizing a legal inference to the contrary" — Dillard, J., in S. v. Sanders, 84 N.C. 729. *Page 25 
The voluntariness of a confession is primarily a question for the trial court. S. v. Alston, 215 N.C. 713, 3 S.E.2d 11; S. v. Whitener,191 N.C. 659, 132 S.E. 603, 132 S.E. 603. It is only when some question of law arises in connection with the court's determination of the matter that the competency of a confession may be reviewed on appeal. S. v.Manning, 221 N.C. 70, 18 S.E.2d 821. Of course, the standard for the determination, or what facts render a confession involuntary, is a question of law, and may be reviewed by the appellate tribunal. S. v.Biggs, supra; S. v. Grier, 203 N.C. 586, 166 S.E. 595; S. v. Crowson,98 N.C. 595, 4 S.E. 143. "What amounts to such threats or promises as render confessions inadmissible, as being not voluntary; what evidence the judge will hear to establish the facts of threats or promises; and whether there be any evidence to show that the confessions were not voluntary are questions of law, and the decision upon them is subject to review in the Supreme Court" — First Headnote, S. v. Andrew, 61 N.C. 205.
The defendants also assign as error certain portions of the charge. It was recited as a contention of the State, in replying to the issue of consent, raised by the defendant's plea, that the jury ought not to find there was any consent on the part of the prosecutrix, "because it was contrary to the training and natural instinct that she should permit a person of the opposite race to have sexual intercourse with her." No objection was interposed at the time this contention was given; nor was it called to the court's attention at any time during the trial so as to afford an opportunity of correction, if correction were needed or desired. In these circumstances, the exception is without avail. S. v. McNair,226 N.C. 462; S. v. Rising, 223 N.C. 747, 28 S.E.2d 221.
The remaining assignments of error made by the defendants. Thompson, Powell and Covington, require no special elaboration. They are without substantial merit, and none can be sustained.
II. THE CASE AGAINST INMAN:
There is evidence tending to show that Cliff Inman was a principal, co-conspirator, or aider and abettor in the crime charged. S. v. Johnson,supra. The testimony of the prosecutrix was sufficient to make him a principal; that of Straughan and the prosecutrix to make him a coconspirator or an aider and abettor. S. v. Whitehurst, 202 N.C. 631,163 S.E. 683; S. v. Johnson, supra. His demurrer to the evidence was properly overruled. The credibility of the witnesses was for the jury.
The point is made with much emphasis that the testimony of the prosecutrix as to her resistance is too weak as against the defendant Inman. The circumstances must be considered. We think it was for the jury to say whether the prosecutrix was prevented from fiercely *Page 26 
resisting by terror or the exhibition of force, or was "in such place and position that resistance would have been useless," and might have been fatal. Mills v. United States, 164 U.S. 644, 41 L.Ed., 584; 44 Am. Jur., 904.
It is also advanced on behalf of the defendant Inman that the trial court omitted to "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon" as required by G. S., 1-180. A careful perusal of the charge instills the thought that it is free from successful attack on the ground suggested. Cf. S. v. Benton,226 N.C. 745, where the meaning and significance of the statute received full consideration.
A searching investigation of the entire record fails to reveal any reversible error on the part of the trial court. Hence, the verdict and judgments as to all four of the defendants will be upheld.
No error.