75 S.E.2d 795 (1953)
237 N.C. 644
YOUNG et al.
v.
SOUTHERN MICA CO. OF NORTH CAROLINA, Inc.
No. 161.
Supreme Court of North Carolina.
May 6, 1953.
*797 W. E. Anglin, Burnsville, for plaintiffs, appellees.
Fouts & Watson, Burnsville, for defendant, appellant.
JOHNSON, Justice.
First, the defendant insists that its motion for judgment as of nonsuit should have been allowed.
Here the defendant relies on the clause in the lease which provides that it shall not be liable to the plaintiffs "for any waste material dropped on their lands while in transit through the flume lines * * * "; whereas the plaintiffs point to the provision in the lease which stipulates that the mining operations do not authorize the defendant "to dump waste" upon any of the lands of the plaintiffs.
This language is clear. "Drop" means "to fall like a drop"; whereas "dump" means "to deposit something in a heap, * * * to let fall in mass." Webster's New International Dictionary, Second Edition, 1951.
Manifestly, the parties intended that the waste dirt should not be dumped on plaintiffs' land, but rather that it should be moved off the plaintiffs' land through the flume line. It was contemplated that small quantities from time to time might drop while in transit through the flume line. For this the defendant was not to be liable.
But here there is evidence tending to show that the flume line "choked up" at the river end, and that thereafter the waste materials "poured over," "piled up," and were "shoveled over" the bottom land until "it piled up there 12 or 15 feet high," where Superintendent Edge said: "We shoveled it out of the flume line."
This was "dumping" within the clear meaning of the lease, and the motion for nonsuit was properly overruled.
Next, the defendant excepts to this portion of the charge to the jury:
"Now, the court charges you that if you find from the evidence, and by the greater weight, the burden being upon the plaintiff to so satisfy you, that the defendant, in transferring the waste from the mining operations, the jigging plant into South Toe River, caused the deposit of sand and waste from the jigging operation by shoveling the same from the flume line upon the bottom land of the plaintiffs or if you find from the evidence, and by the greater weight, that the defendants, by reason of the flume line breaking down, permitted the waste to flow upon the land of the plaintiffs, thereby causing it to be dumped upon the areas that have been described to you, then, and in that event, or either event, the court charges you that that would constitute dumping within the meaning of the term of this contract, and it would be your duty *798 to answer the first issue yes." (Italics added).
Here, the defendant contends that the court gave to the word "drop" the meaning of "dump", and that therefore the charge is in conflict with the provision of the lease which exempts the defendant from liability for damage caused by "* * * waste materials dropped while in transit through the flume lines."
The contention is untenable. The rule is that where the language of a contract is free from ambiguity, the ascertainment of its meaning and effect is for the court, and not for the jury. Hilley v. Blue Ridge Insurance Co., 235 N.C. 544, 70 S.E. 2d 570; Sellars v. Johnson, 65 N.C. 104. We find no ambiguity or uncertainty in the language of the contract before us. Accordingly, it was the duty of the court to declare its meaning. This the court did. Festerman v. Parker, 32 N.C. 474.
The court placed on the plaintiffs the burden of proving that the defendant deposited the waste on plaintiffs' land in a manner that amounted to "dumping," by shoveling it from the flume line, or by permitting, after failure to keep the flume line up, the waste to flow upon the bottom land, and left it to the jury to find the facts from the evidence.
True, the expression of the court which appears in italics amounts to a technical invasion of the province of the jury. However, on the record as presented it is not perceived that this expression could have been prejudicial to the defendant. In effect, it was but a short-hand statement of uncontroverted phases of the evidence, including statements made by defense witnesses to the effect that when the flume line choked up the waste materials "just poured over and piled over the flume line and went over in the bottom," and admissions of Superintendent Edge that the dirt was shoveled out of the line in great quantities and piled in places higher than the flume line itself. The challenged instruction may not be held as prejudicial error.
Another exception brought forward by the defendant presents the question whether the verdict was vitiated because of the presence on the jury of a person who had forfeited his citizenship by reason of conviction of a criminal offense.
The presiding judge, in response to the defendant's motion to set aside the verdict, found in substance these facts: that the juror in question was a regular juror, drawn from the panel and summoned by the sheriff, and passed by the defendant; but that when passed the defendant did not know the "juror had forfeited his citizenship by service of a term in prison." The court further found that the juror had filed a petition to have his citizenship restored under the provisions of G.S. § 13-1, and that immediately after the "rendition of the judgment in this case, * * * counsel for the juror called the matter to the attention of the court and offered his witnesses for restoration of citizenship, * * * and that a judgment was signed * * *, restoring the citizenship of said juror * * *." Upon the facts found, the defendant's motion to set aside the verdict was overruled, and the defendant excepted.
It may be conceded that the facts here shown would have been ground for challenge of the juror for cause. G.S. § 9-1, as rewritten by Chapter 1007, Session Laws of 1947. Nevertheless, his disqualification as shown does not ipso facto vitiate the verdict; nor do the disqualifying facts entitle the defendant to have the verdict set aside as a matter of law or right.
True, the judge found that the defendant did not know of the disqualifying facts until after trial. But even in such a case, in the absence of a showing that the juror on the voir dire examination falsely denied or concealed matters which would have established his disqualification, the motion first made after verdict was addressed to the discretion of the trial judge, and in such a case, in the absence of a showing of actual prejudice amounting to abuse of discretion, the ruling of the trial judge is not reviewable.
Our investigation discloses no decision of this Court dealing with the precise question here presented, i. e., whether criminality of a juror, as distinguished from other disqualifying causes, first discovered after verdict, vitiates the verdict and furnishes *799 ground for a new trial as a matter of right. However, the conclusion here reached is supported in principle by numerous authoritative decisions of this Court; and the great weight of authority in other jurisdictions on the precise question of criminality of a juror supports the view here expressed. See State v. Crawford, 3 N.C. 298 (juror not a freeholder); State v. Patrick, 1856, 48 N.C. 443 (juror not a slave owner); State v. Douglass, 63 N.C. 500 (Sheriff who summoned jurors disqualified for having served as Sheriff during War between States); State v. White, 68 N.C. 158 (juror a nonresident of the county); State v. Davis, 80 N.C. 412 (juror an atheist); State v. Lambert, 93 N.C. 618 (juror under twenty-one years of age and not a freeholder) ; Baxter v. Wilson, 95 N.C. 137, 139 (juror related to plaintiff); State v. Council, 129 N.C. 511, 39 S.E. 814 (juror sworn in improper manner); State v. Maultsby, 130 N.C. 664, 41 S.E. 97 (juror related to prosecuting witness); State v. Lipscomb, 134 N.C. 689, 47 S.E. 44 (juror under twenty-one years of age); State v. Drakeford, 162 N.C. 667, 78 S.E. 308 (juror member of grand jury which found former bill which was fatally defective); State v. Levy, 187 N.C. 581, 122 S.E. 386 (history of right of challenge reviewed by Stacy, J. (later C. J.)); State v. Sheffield, 206 N.C. 374, 174 S.E. 105 (bias of juror); Commonwealth v. Wong Chung, 186 Mass. 231, 71 N.E. 292; Raub v. Carpenter, 187 U.S. 159, 23 S.Ct. 72, 73, 47 L.Ed. 119 (juror under age of twenty-one years and also "several times * * * convicted of the crime of petit larceny"); State v. Powers, 10 Or. 145, 45 Am.Rep. 138 (juror previously convicted of crime involving moral turpitude). See also State v. Greenwood, 2 N.C. 141 (juror a nonresident of the state); Wassum v. Feeney, 121 Mass. 93, 23 Am.Rep. 258; Kohl v. Lehlback, 160 U.S. 293, 300, 16 S. Ct. 304, 40 L.Ed. 432; Annotations: 18 L. R.A. 473, p. 478; 50 L.R.A.,N.S., 933, pp. 939 and 976; 31 Am.Jur., Jury, Sec. 119; 39 Am.Jur., New Trial, Sections 39 and 42; 66 C.J.S., New Trial, §§ 22 and 23.
In State v. White, supra, where the juror was a nonresident of the county, it is said: "This was a good cause of challenge, but as it was not taken in apt time we must consider it as waived. But the defendant replies that he did not know it until after verdict. He could have known it, had he challenged the juror when tendered. The fact that an incompetent juror was permitted by the defendant to try his case does not vitiate the verdict."
In State v. Davis, supra, where the juror was an atheist, it is said, with Ashe, J., speaking for the Court: "* * * their (defendants) objection comes too late. It is well settled by English authorities sanctioned by the uniform practice of centuries and by numerous decisions in this state, that no juror can be challenged by the defendant without consent after he has been sworn, unless it be for some cause which has happened since he was sworn. * * * where the challenge is to the poll, made for good cause, in apt timethat is before the juror is swornit is strictly and technically a ground for a venire de novo; if made after the juror is sworn the court may in its discretion allow the challenge; but its refusal to do so is no ground for a venire de novo, because the prisoner has lost his legal right by not making his objection at the proper time."
In State v. Lipscomb, supra, where the juror was under twenty-one years of age, it is said, with Walker, J., speaking for the Court [134 N.C. 689, 47 S.E. 46]: "* * * there is an apt time for each and every step in all legal proceedings, and every objection must be made and every privilege claimed at the proper time, or the party who should thus have asserted his right will be considered as having waived it. The objection to the juror in this case was not presented in apt time. * * * It came too late after verdict, and could then be addressed only to the discretion of the court."
In State v. Levy, supra, with Stacy, J., (later C. J.) speaking for the Court, it is said [187 N.C. 581, 122 S.E. 390]: "Challenges to the polls, or objections to individual jurors, must be made in apt time, or else they are deemed to be waived. It is too late after the trial has been concluded. * * * The fact that an incompetent juror was permitted to sit on the case does not vitiate the verdict. * * * But, when the incompetency *800 is not discovered until after the verdict, it is then discretionary with the judge as to whether he will, under the circumstances, order a new trial, and his action in this respect is final. * * *"
In Commonwealth v. Wong Chung, supra, with Knowlton, C. J., speaking for the Massachusetts Court, it is said [186 Mass. 231, 71 N.E. 294]: "While the duty of ascertaining that the persons drawn as jurors are properly qualified rests primarily upon the commonwealth, through its designated officers, the parties to trials in court have an interest in the same subject, and upon them rests a responsibility for the proper protection of their own rights. It is expected that they will consider somewhat the qualifications of those who are to sit in judgment in their causes. Our system provides for challenges by the parties, both in civil and criminal cases, which may be peremptory as well as for cause. If, notwithstanding the efforts of public officers to perform their duties, and such efforts as the parties choose to make for the protection of their rights in regard to qualifications of jurors, it is discovered after a verdict that a disqualified person has joined in the decision, the interests of justice require that the irregularity or accident shall be treated like other irregularities. The responsibility for it should be treated as resting in part upon the parties, while primarily it is upon the public authorities. If, in the opinion of the presiding justice, the disqualification of a juror has operated injuriously, and has tended to the return of an erroneous verdict, or has otherwise worked injustice, a new trial should be granted. A motion for a new trial for such a cause, like motions for new trials generally, should be addressed to the discretion of the court."
In the case at hand there is no suggestion of actual prejudice or abuse of discretion. Therefore, it follows from what we have said that the defendant's exception to the discretionary ruling of the trial court is untenable. The exception is overruled.
The decisions cited and relied on by the defendant are distinguishable. In Hinton v. Hinton, 196 N.C. 341, 145 S.E. 615, the case more nearly in point, an alien sat on the jury. There the defendant's motion to set aside the verdict was allowed as a matter of law, and the ruling was upheld by this Court. However, pertinent to decision were these crucial facts found by the trial judge: (1) that counsel for the defendant on the voir dire asked the juror "if he was a citizen of the United States" and was told that he was, when in fact he was not; and (2) that if the juror had given a truthful answer, counsel would have rejected him. Thus, in the Hinton case there was a false concealment of facts which would have established the juror's disqualification and led to his challenge. Hence the case comes squarely within the exception recognized by the rule applied in the instant case.
We have examined the rest of the defendant's exceptive assignments of error and find them to be without substantial merit.
The verdict and judgment below will be upheld.
No error.