STATE OF NORTH CAROLINA v. LARRY JUNIOUS BOOKER

No. 64A81

(Filed 13 July 1982)

1. **Criminal Law §§ 26.8, 126.2— inability of jury to reach verdict—note from jury not implied acquittal of first-degree murder—no double jeopardy upon retrial**

    Where possible verdicts of guilty of first-degree murder, guilty of second-degree murder and not guilty were submitted to the jury at defendant's first trial, and the first trial ended in a mistrial because the jury could not agree upon a verdict, a note from the foreman of the jury to the trial judge stating that the jury was deadlocked seven to five in favor of a verdict of guilty of second-degree murder did not constitute an implied acquittal of defendant of first-degree murder so as to prohibit the retrial of defendant on that charge under double jeopardy principles, since a final verdict is required before there can be an implied acquittal. Furthermore, the Supreme Court will not adopt a rule requiring the trial court to determine whether the jury had voted unanimously for acquittal on any of the included offenses when the jury indicates to the court that it cannot reach a unanimous verdict. Fifth Amendment to the U.S. Constitution; Art. I, § 19 of the N.C. Constitution.

2. **Criminal Law § 75.2— confession—statement by officer—no improper inducement**

    An interrogating officer's statement that defendant "would feel better if he got it off his chest" did not constitute an improper inducement which rendered defendant's confession inadmissible, since an improper inducement engendering hope must relate to the defendant's escape from the criminal charge against him, and the officer's statement referred to a purely collateral advantage which was entirely disconnected from the possible punishment or treatment defendant might receive.

3. **Criminal Law § 75.3— confession—confronting defendant with evidence—no improper inducement**

    Defendant was not improperly induced to confess by being confronted with the results of a ballistics test which tended to show that the fatal shots were fired from a pistol in his possession during the time frame of the killing where all the evidence tended to show that defendant was seated in a hallway outside an office where a police officer received a telephone call and that defendant overheard the officer repeat the information received by him concerning the ballistics test since (1) there was no confrontation as such, and (2) even had defendant been confronted with such *bona fide* evidence, this circumstance would not have rendered the subsequent confession inadmissible absent intimidation, coercion or other inducement to confess.

4. **Criminal Law § 75.2— confession—length of time of questioning—absence of deprivation or abuse**

    Defendant's confession was not rendered involuntary by the length of time he was questioned absent some deprivation or abuse where defendant

was questioned by two police officers and was in custody for approximately five and one-half hours before he confessed, but defendant was not continuously questioned during such time, and the record shows that defendant remained alone in police headquarters for about one and one-half hours while the officers were making independent investigations concerning the case.

**5. Criminal Law § 76.5— voluntariness of confession—conflicting evidence—necessity for findings of fact**

The trial court in a prosecution for first-degree murder and armed robbery erred in failing to make findings of fact resolving the conflicting voir dire testimony as to whether interrogating officers threatened defendant with the gas chamber; whether officers told defendant that if he confessed they would tell the district attorney and the judge that defendant had cooperated and things would be lighter on him; whether police officers yelled at defendant during the interrogation and told him to stop telling lies; whether officers, in permitting defendant to talk with his mother, instructed defendant and his mother not to discuss the matter under investigation; whether defendant was told by officers when he requested food that he could eat and could see his family members only if he would confess; and whether officers instructed him on what to say during the recording of his confession.

APPEAL of right from *McLelland, Judge,* at the 12 January 1981 session of ALAMANCE Superior Court.

Defendant was charged in separate bills of indictment, proper in form, with the first-degree murder and the armed robbery of Louis Henry Shoe.

Prior to trial defendant moved to suppress his confession on the ground that it was not voluntarily made. The motion to suppress was heard by Judge Godwin who after hearing evidence found facts and denied the defendant's motion to suppress.

The case before us is the second trial on the charges of first-degree murder and armed robbery. The first trial ended in a mistrial because the jury could not agree upon a verdict. The case then came on for retrial before Judge McLelland, and defendant moved to dismiss the charge of first-degree murder on the grounds that the jury in the first trial had impliedly acquitted him and the State was foreclosed from retrying him on the first-degree murder charge by reason of the double jeopardy provisions of the United States and North Carolina constitutions. The trial judge denied this motion, and defendant thereupon moved to stay the proceedings and for a continuance pending appeal of the denial of his motion to dismiss. Defendant's motions to stay and continue were denied.

The jury returned verdicts of guilty of first-degree murder and of guilty of armed robbery. The trial judge arrested judgment on the armed robbery conviction and sentenced defendant to life imprisonment on the charge of first-degree murder. Defendant appealed to this Court pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Assistant Attorney General, for the State.*

*Gregory Davis and William T. Wilson, Jr., for defendant appellant.*

BRANCH, Chief Justice.

[1] Defendant assigns as error the denial of his motion to dismiss the charge of murder in the first degree. He argues that his retrial on a charge of murder in the first degree would violate his constitutional right, guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution, to be free from being twice placed in jeopardy for the same criminal offense.

At defendant's first trial the possible verdicts of guilty of first-degree murder, guilty of second-degree murder, and not guilty were submitted to the jury. Defendant asserts that during the first trial the foreman of the jury sent a note to the trial judge which stated that the jury was deadlocked seven to five in favor of a verdict of guilty of second-degree murder. It is defendant's position that this note indicated that the jury had implicitly found the defendant not guilty of first-degree murder. We do not agree.

The general rule in North Carolina is that an order of mistrial will not support a plea of former jeopardy. When a jury has declared its inability to reach a verdict, the action of the trial judge in declaring a mistrial is reviewable only in case of gross abuse of discretion and the burden is on the defendant to show such abuse. *State v. Battle,* 279 N.C. 484, 183 S.E. 2d 641 (1971). *Accord State v. Simpson,* 303 N.C. 439, 279 S.E. 2d 542 (1981); *State v. Alston,* 294 N.C. 577, 243 S.E. 2d 354 (1978). There is nothing in this record to show any abuse of discretion on the part of the trial judge. The record merely reflects that in the first trial a mistrial was declared because the jury was unable to reach a verdict and does not disclose that defendant opposed the declaration of a mistrial.

Defendant urges us to adopt the rule enunciated by the New Mexico court in *State v. Castrillo*, 90 N.M. 608, 611, 566 P. 2d 1146, 1149 (1977), as follows:

> Henceforth, when a jury announces its inability to reach verdict in cases involving included offenses, the trial court will be required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses. The jury may then be polled with regard to any verdict thus returned.

We reject this request. We are of the opinion that the better reasoned rule is the majority rule which requires a *final verdict* before there can be an implied acquittal. *State v. Cousin*, 292 N.C. 461, 233 S.E. 2d 554 (1977). *See also, Price v. Georgia*, 398 U.S. 323, 26 L.Ed. 2d 300, 90 S.Ct. 1757 (1970); *Green v. United States*, 355 U.S. 184, 2 L.Ed. 2d 199, 78 S.Ct. 221 (1957); *Walters v. State*, 255 Ark. 904, 503 S.W. 2d 895, *cert. denied*, 419 U.S. 833, 42 L.Ed. 2d 59, 95 S.Ct. 59 (1974); *People v. Hall*, 25 Ill. App. 3d 992, 324 N.E. 2d 50 (1975); *People v. Hickey*, 103 Mich. App. 350, 303 N.W. 2d 19 (1981).

The case of *People v. Hickey, supra*, so well states the rationale of these decisions that we deem it proper to quote therefrom the following:

> Defendant's conviction followed a second trial on the charge of first-degree murder, the first trial having ended in a mistrial due to a hung jury. At the first trial, the jury was instructed that it could return one of four possible verdicts: guilty of first-degree murder, guilty of second-degree murder, guilty of voluntary manslaughter, or not guilty. When the jury indicated to the court that it could not reach a unanimous verdict, defense counsel requested that the trial court inquire as to whether the jury had reached a decision concerning defendant's guilt or innocence on any of the charges submitted to it. The trial court refused to make such an inquiry.
>
> Defendant contends that his second trial on the charge of murder was barred by art 1, § 15 of the Michigan Constitution, and by the Fifth Amendment to the United States Constitution, which provide that a person may not be placed

twice in jeopardy for the same offense. Defendant argues that the trial court's failure to inquire as to the status of the jury's deliberations on the various possible verdicts submitted to it prevented the court from discovering whether the jury had decided that defendant was innocent of all charges except manslaughter. Defendant urges the adoption of the rule announced in *State v Castrillo*, 90 NM 608; 566 P 2d 1146 (1977), where it was held that where a jury announced its inability to reach a verdict, and the trial court failed to determine whether the jury had unanimously voted for acquittal on any of the included offenses, jeopardy attached as to all charges except the charge of voluntary manslaughter, the least of the included offenses. The New Mexico court held that there is no plain and obvious reason to declare a mistrial as to any included offense upon which the jury has reached a unanimous agreement of acquittal. Consequently, the Court ruled that when a jury announces its inability to reach a verdict in a case involving included offenses, the trial court is required to submit verdict forms to the jury to determine if it has unanimously voted for acquittal on any of the included offenses, and the jury may then be polled with regard to any verdict thus returned.

Other jurisdictions have examined defendant's argument and rejected it. See, *Walters v State*, 255 Ark 904; 503 SW 2d 895 (1974), *cert den* 419 US 833; 95 SCt 59; 42 LEd 2d 59 (1974), *People v Griffin*, 66 Cal 2d 459; 58 Cal Rptr 107; 426 P 2d 507 (1967), *People v Doolittle*, 23 Cal App 3d 14; 99 Cal Rptr 810 (1972), *People v Hall*, 25 Ill App 3d 992; 324 NE 2d 50 (1975), *State v Hutter*, 145 Neb 798; 18 NW 2d 203 (1945). *We conclude that polling the jury on the various possible verdicts submitted to it would constitute an unwarranted and unwise intrusion into the province of the jury.* As was noted by the California Supreme Court in *Griffin, supra, it must be recognized as a practical matter that jury votes on included offenses may be the result of a temporary compromise in an effort to reach unanimity. A jury should not be precluded from reconsidering a previous vote on any issue, and the weight of final adjudication should not be given to any jury action that is not returned in a final verdict.*

103 Mich. App. at 351-53, 303 N.W. 2d at 20-21. (Emphasis added.)

In *State v. Alston, supra,* defendant was charged with kidnapping, armed robbery, and assault with a deadly weapon with intent to kill inflicting serious injury. The jury was unable to reach a verdict and sent a note to the trial judge that "due to lack of sufficient evidence, the jury cannot come to the agreement that this defendant . . . is in fact the man that committed these crimes." *Id.* at 583, 243 S.E. 2d at 359. A mistrial was declared, and we held that the written memorandum to the trial judge did not constitute an acquittal. Defendant's attempt to distinguish *Alston* from instant case on the ground that there was no indication in *Alston* as to what charge the jury was considering is fruitless. The jury's inability to agree was as to the *identity* of the person who committed the crime and therefore necessarily involved all charges.

In the case before us for decision, the jury did not return a final verdict and therefore there was no implied acquittal.

For reasons stated defendant's assignment of error on this point is overruled.

Defendant further argues that the trial judge erred by denying his motion to stay his retrial pending appeal of the denial of his motion to dismiss, or, in the alternative, to continue the retrial pending appeal. This assignment of error is rendered moot by our decision that defendant was not subjected to double jeopardy.

By his next assignment of error, defendant contends that Judge Godwin erred by denying his motion to suppress his inculpatory in-custody statement to police officers. He argues that the statement was not voluntarily made and was therefore inadmissible into evidence.

No principle is more firmly embedded in the law of this State than the often quoted statement from *State v. Roberts,* 12 N.C. (1 Dev.) 259, 260 (1826), that "a confession cannot be received in evidence where the defendant has been influenced by any threat or promise; . . . a confession obtained by the slightest emotions of hope or fear ought to be rejected." *Accord State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975); *State v. Fuqua,* 269 N.C. 223, 152 S.E. 2d 68 (1967); *State v. Woodruff,* 259 N.C. 333, 130 S.E. 2d 641 (1963); *State v. Stevenson,* 212 N.C. 648, 194 S.E. 81 (1937); *State*

*v. Livingston,* 202 N.C. 809, 164 S.E. 337 (1932); *State v. Drake,* 113 N.C. 625, 18 S.E. 166 (1893); *State v. Whitfield,* 70 N.C. 356 (1874).

When a defendant properly objects to the admission of the confession or moves to suppress same, the trial judge should conduct a preliminary inquiry to determine whether the confession is voluntary. *State v. Pruitt,* supra; *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511 (1968); *State v. Conyers,* 267 N.C. 618, 148 S.E. 2d 569 (1966). In making this determination, the trial judge must find facts; and when the facts are supported by competent evidence, they are conclusive on the appellate courts. However, the conclusions of law drawn from the findings of fact are reviewable by the appellate courts. *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363 (1965); *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344 (1965). Of course, if the evidence is not in conflict, the trial judge's findings are binding on the appellate courts. In instant case defendant testified to some matters tending to show coercion and improper inducement to cause him to confess which were controverted by the State's evidence. He also offered uncontroverted evidence which he contends supports his position that the confession was involuntary. We first address the matters which are not in conflict.

[2] Defendant testified that during his interrogation by the police officers he was told that he "would feel better if he got it off his chest."

This Court has long recognized that the inducement to confess whether it be a promise, a threat, or mere advice must relate to the prisoner's *escape* from the criminal charge against him. *State v. Hardee,* 83 N.C. 619 (1880). In *Hardee* this court quoted with approval from 1 Taylor Ev., § 803, the following:

"Passing now," says the author, "to the nature of the inducement, it may be laid down as a general rule that in order to exclude a confession, the inducement, whether it assume the shape of a promise, a threat, or a mere advice, must have some reference to the prisoner's escape from the criminal charge against him. So a promise of some merely collateral benefit or boon, as for instance a promise to give the prisoner some spirits or to strike off his handcuffs or to let him see his wife, will not be deemed such an inducement as

will authorize the rejection of a confession made in consequence." 1 Taylor Ev., § 803.

That a collateral inducement, having no relation to the offence, is an insufficient reason for rejecting a confession given in response, is concurred in by other elementary writers and sustained by adjudicated cases. 1 Arch. Cr. Pl., 127; 1 Whar. Cr. Law, § 686; 1 Greenl. Ev., § 229; *State v. Wentworth*, 37 N.H., 196; *Commonwealth v. Howe*, 2 Allen, (Mass.) 158.

83 N.C. at 623-24.

In *State v. Pruitt, supra,* the Court made it clear that an "Improper inducement engendering hope must promise relief from the criminal charge to which the confession relates, not to any merely collateral advantage." 286 N.C. at 458, 212 S.E. 2d at 102. *See also State v. Pressley,* 266 N.C. 663, 147 S.E. 2d 33 (1966).

Here the statement of the interrogating officer was not related to defendant's escape from the charges against him but referred to a purely collateral advantage which was entirely disconnected from the possible punishment or treatment defendant might receive. Such a statement would not come within the rule of *Roberts* or its progeny.

[3] Defendant also avers that he was improperly induced to confess because police officers confronted him with the results of a ballistics test which tended to show that the fatal shots were fired from a pistol in his possession during the time frame of the killing.

All the evidence tends to show that the defendant was seated in a hallway outside an office where a police officer received a telephone call. Defendant overheard the officer repeat the information received by him concerning the ballistics test. Thus there was no confrontation as such. Even had defendant been confronted with this *bona fide* evidence, this circumstance would not have rendered the subsequent confession inadmissible absent intimidation, coercion, or other inducement to confess. This Court has considered several cases in which the accused was confronted with evidence against him in which the Court held that the confrontation did not render an ensuing confession inadmissible absent trickery, coercion, or other improper inducements. *State v.*

*Mitchell,* 265 N.C. 584, 144 S.E. 2d 646 (1965) (defendant charged with larceny was confronted with the fact that the jacket he was wearing was one of the items reported stolen); *State v. Smith,* 213 N.C. 299, 195 S.E. 819 (1938) (a person accused of rape was confronted with the fact that the description given police of the assailant contained the description of a coat which matched coat owned by accused); *State v. Myers,* 202 N.C. 351, 162 S.E. 764 (1932) (accused charged with murder was confronted with the murder weapon and keys to a stolen automobile which were found in his home). *See also, State v. Anderson,* 208 N.C. 771, 182 S.E. 643 (1935). Our examination of these cases leads us to conclude that it is not the disclosure of the evidence to an accused but an impermissible use of such evidence which may be a circumstance affecting the admissibility of a confession.

Here there is not a vestige of evidence tending to show that the overheard telephone conversation amounted to an act of coercion, threat, or inducement on the part of the police which was designed to extort a confession from defendant.

[4]   We next consider the effect of the interrogation of defendant by two police officers on the day the crimes were committed within the five and a half hour time frame between the time defendant was picked up and the time he made an inculpatory statement. Defendant argues that when considered with the totality of the circumstances this prolonged interrogation was an operative factor in rendering his confession inadmissible.

It is true that interrogation by law enforcement officers may be so prolonged under some circumstances as to render a confession involuntary. Circumstances to be considered are whether the interrogation is accompanied by deprivation, abuse, or a relentless and overbearing use of multiple interrogators. *State v. Morgan,* 299 N.C. 191, 261 S.E. 2d 827 (1980).

Here defendant was questioned by two police officers and was in custody for a period of about five and one-half hours before he confessed. He was not continuously questioned during this period of time. The record shows that defendant remained alone in the police headquarters for about one and one-half hours while the officers were making independent investigations concerning the case. Therefore, absent deprivation or abuse, we find nothing amounting to a violation of defendant's constitutional

rights in the *length* of time he was questioned. Further, we are not convinced that any one or the totality of defendant's contentions regarding the uncontroverted evidence above discussed amount to such violation of defendant's due process rights as would render defendant's confession inadmissible. However, there remains the question of whether the totality of the evidence, including both the uncontroverted evidence and the evidence in conflict, amounted to such coercion, actual or psychological, as would render defendant's confession involuntary. It appears that the able trial judge who was considering a motion to suppress evidence resulting from a search and a motion to suppress defendant's confession at the same time inadvertently failed to find facts so as to resolve conflicts in pertinent evidence concerning circumstances surrounding defendant's interrogation and his resulting confession.

[5] Defendant testified on voir dire that during his interrogation by Detective Ingle and Lieutenant Garner he was threatened, promises were made to him, and he was deprived of certain conveniences. Defendant testified that the police threatened him with the gas chamber; the police denied making any threats and specifically denied threatening defendant with the gas chamber or the death penalty. Defendant stated that the police told him that if he confessed they would tell the district attorney and the judge that defendant had cooperated and things would be lighter on him; the police denied making any promises to defendant and specifically denied telling him that things would go easier on him if he confessed. The officers further denied that they offered to intercede on defendant's behalf with the district attorney and the judge if defendant cooperated. Defendant maintained that the police yelled at him during the interrogation and told him to stop telling lies; the police denied yelling at defendant or accusing him of lying. Defendant testified that he was allowed to talk with his mother but only in the presence of a police officer, and they were instructed not to discuss the matter under investigation; the police admitted that defendant was allowed to speak with his mother while an officer was present, but denied that anyone had told them not to discuss the case. Defendant stated that when he requested food he was told that he could eat and could see his family members if he would confess; the police denied depriving defendant of food during the investigation. Defendant maintained

that during the recording of his statement, the police officers questioning him instructed him on what to say; the police officers denied this claim.

The only language in the trial judge's order which addressed this conflicting evidence states that:

> He [defendant] was fully advised of, understood, and waived his aforesaid constitutional rights to remain silent and to legal counsel and . . . he freely, voluntarily, intelligently and intentionally confessed to law enforcement officers that he had robbed and murdered Louis Henry Shoe.

This language is a conclusion of law rather than a finding of fact.

In *State v. Conyers, supra,* Justice Bobbitt (later Chief Justice) speaking for the Court in considering the admissibility of a confession stated:

> At the conclusion of the preliminary hearing, the trial judge made this entry: "Let the records show that the Court finds the statement and admissions to Officer Munn and Officer Watkins were made freely and voluntarily by the defendant without reward or hope of reward, or inducement, or any coercion from said officers."
>
> While under earlier decisions this ruling would have been sufficient, it is insufficient under the rule established in *S. v. Barnes, supra,* and referred to with approval in *S. v. Hines, supra,* and in *S. v. Walker, supra.* The court did not make findings of fact. The statements in the court's ruling are conclusions. Indeed, the ruling here falls short of the ruling held insufficient in *S. v. Barnes, supra.* The following statement of Higgins, J., in *S. v. Barnes, supra,* is applicable here: "Judge Bundy did not resolve the conflicts by findings of fact. This was the exclusive function of the trial court. Absent findings of fact, this Court is unable to say whether Judge Bundy committed error in admitting the contested confession. We may, it seems, no longer rely on the presumption of regularity in such matters."

267 N.C. at 621-22, 148 S.E. 2d at 572.

The court's failure to find facts resolving the conflicting voir dire testimony was prejudicial error requiring remand to the su-

perior court for proper findings and a determination upon such findings of whether the inculpatory statement made to police officers by defendant during his custodial interrogation was voluntarily and understandingly made.

Where there is prejudicial error in the trial court involving an issue or matter not fully determined by that court, the reviewing court may remand the cause to the trial court for appropriate proceedings to determine the issue or matter without ordering a new trial. *United States v. Wade*, 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967); *State v. Tart*, 199 N.C. 699, 155 S.E. 609 (1930); *State v. Byrd*, 35 N.C. App. 42, 240 S.E. 2d 494 (1978); *State v. Ingram*, 20 N.C. App. 35, 200 S.E. 2d 417 (1973).

We have exercised our authority under Appellate Rule 2 to suspend the Rules of Appellate Procedure to review this entire record, including errors not raised by defendant or raised but not argued in defendant's brief. We find no other prejudicial error. Therefore, since the trial court may determine the question of voluntariness, and having found no other prejudicial error, we do not deem it necessary to order a new trial.

This cause is remanded to the Superior Court of Alamance County where a judge presiding over a criminal session will conduct a hearing, after due notice and with defendant and his counsel present, to determine whether the statement allegedly made by defendant to Lieutenant Garner and Detective Ingle was made voluntarily and understandingly. If the presiding judge determines that the statement was not voluntarily and understandingly made, he will make his findings of fact and conclusions and enter an order vacating the judgment appealed from, setting aside the verdict, and granting defendant a new trial. If the presiding judge makes a determination based upon competent evidence that the statement of defendant was made voluntarily and understandingly, he will make his findings of fact and conclusions of law, and thereupon order commitment to issue in accordance with the judgment appealed from and entered on 19 January 1981.

No error in the trial except on the issue of whether defendant's custodial statement was voluntary.

Remanded with instructions.