## STATE v. J. C. PARISH.

*Indictment—Larceny—Evidence—Confessions.*

On a trial for larceny, it was in evidence that the defendant had been charged in his neighborhood with being a common thief, and that notice had been given for a neighborhood meeting "to consult as to what should be done with him about his stealing so much ; that prior to the meeting the defendant went to one of the neighbors engaged in the movement and denied that he had anything to do with the stealing which had been going on ; that on the day of the meeting the neighbors assembled and sent word to the defendant that if he would leave the State, they would not interrupt him, and two days thereafter he left ; that after a few months he returned, and in a few hours after his arrival, the same neighbors who took part in the first meeting had again assembled ; that upon being asked by the prosecutor "are you not ashamed to try to break up an old man as I am by stealing his sheep and hogs ?" the defendant replied, hanging down his head, "the first two hogs you lost, I did not get ;" *Held,* that the confession of the defendant was not admissible in evidence.

(SMITH, C. J. and RODMAN, J. *Dissenting.*)

INDICTMENT for Larceny tried at August Term, 1877, of WAKE Criminal Court, before *Strong, J.*

The defendant was charged with stealing a sheep, the property of John Young who was introduced by the State for the purpose of proving certain confessions made by the defendant. The witness stated, on the preliminary examination, that about two months before the time the confessions were alleged to have been made, and after the time the sheep was alleged to have been stolen, the defendant had left the State ; that the confessions were made on the morning of his return and at his father-in-law's ; he was not under arrest and no promises or threats had been made to him ; the witness and other persons had been sent for, but nothing was said as to the purpose for which they had

come together ; the defendant's father-in-law stated that he (defendant) got back that morning ; witness stated that the confessions were made as soon as he got there and that he "went straight for him" (defendant) and that he heard no one else speak to defendant before the confessions were made. The defendant objected to the evidence as to the confessions upon the ground of undue influence, the objection was overruled, and the witness testified, that he said to defendant, "are you not ashamed to try to break up as old a man as I am by stealing his sheep and hogs ; the defendant sat a second looking down and said ' the first two hogs you lost I did not get.'" It was also in evidence that the defendant left the State on Monday ; that on the Saturday before, there had been a meeting of the citizens of the neighborhood at which a dozen or more were present to consult as to what was to be done with the defendant " about his stealing so much," and they concluded if he would leave the State and never return, they would not " interrupt him" on account of the respect they had for his wife and children and for the family of his father-in-law. Thereupon the defendant's counsel again asked the Court to exclude the confessions previously admitted, which His Honor declined, and the defendant excepted. It is unnecessary to set out the testimony of other witnesses, as it does not bear upon the point decided in this Court. Verdict of Guilty. Judgment. Appeal by defendant.

*Messrs. W. H. Pace* and *D. G. Fowle* who prosecuted in the Court below appeared with the *Attorney General,* for the State.

*Messrs. A. M. Lewis* and *T. M. Argo,* for the defendant.

READE, J. The confessions of a defendant are admissible when they were voluntary, and inadmissible when they were not. But how can we look into the defendant's heart

and see how it was?   We have to look at the circumstances of each case and at human nature as we know it to be, and judge what is reasonable about it.

The defendant was charged in his neighborhood with being a common thief.   Notice had been given for a neighborhood meeting.   They were to meet on Saturday.   Before Saturday came the defendant went to one of the neighbors who was engaged in the movement, and talked to him about it, and denied that he had had any thing to do with the stealing, which had been going on.   The neighbor told him he would let him know about it next week.   On Saturday the neighbors met, a dozen or more, "to consult as to what was to be done with the defendant about his stealing so much"—to use the language of the witness—"and they concluded that if he would leave the State and never return they would not interrupt him."   And they asked one of their number to tell him of it.   And on Monday following the defendant fled, leaving his wife and children.

Now, what did the defendant have a right to apprehend from that public meeting?   Not a prosecution, because that was not the way to set it on foot.   And besides it was not for one, or any particular stealing, but for "stealing so much."   They had adjudged him to be a common thief, out of the reach of the law, and they meant to deal with him under a law of their own.   He would have known what to expect if prosecuted in Court,—conviction and punishment if guilty, or acquittal if innocent.   But they had already convicted him by common consent of "stealing so much" and the punishment which they meant to inflict was not prescribed in any book.   And nothing is so terrific to brute or man, as the mad pursuit of his own kind.   If he had not left on Monday and the neighbors had met again and arrested him, or "interrupted him," as their language was, would any one suppose he was in a condition for voluntary action?   He would have known that it would do

STATE *v.* PARISH.

him no good to deny it, because before the meeting he had gone to one of them and denied it; and yet after that they determined that he must leave, or be "interrupted," whatever that might mean.

The condition upon which he was not to be "interrupted" was, that he was to leave and "never return." But after an absence of a few months he did return to his father-in-law's, getting there before day, and in a few hours, early in the morning, his father-in-law had gathered a number of those same neighbors, and he found himself in their power.

Now from what we know of human nature, what are we to assume was the state of his mind? Suppose him to be innocent, what would have been his apprehension? "They told me if I did not leave and never return they would mob me. I have returned and here they are to mob me. I tried denying my guilt and that did no good. It may be that if I will not irritate them by further denial I may appease them by confession." And therefore when the prosecutor "went for him"—a cant phrase by which we understand, fiercely accosted him with the inquiry, "are you not ashamed to try to break up an old a man as I am by stealing his sheep and hogs?" the defendant "sat a second hanging down his head and said 'the first two hogs you lost, I did not get.'" The confession itself shows the state of his mind. It was neither a confession nor a denial. He was afraid to do either. "Which way I turn is death."

We are of the opinion that the confession ought not to have been admitted.

There is error. Let this be certified &c.

PER CURIAM.                                  *Venire de novo.*