STATE v. CHRISTINE WARREN.

(Filed 1 February, 1952.)

**1. Criminal Law § 33—**

An extrajudicial confession of guilt by an accused is admissible against him when, and only when, it is in fact voluntarily made.

**2. Same—Evidence held not to support finding that confession was voluntary.**

Where the uncontradicted evidence on the *voir dire* tends to show that defendant was arrested for theft without a warrant by an officer having no reasonable ground to believe her guilty, that she was taken to the police station, twice searched without finding any incriminating property, badgered with accusations and questions for five hours, during all of which time she consistently denied her guilt, but that after she was told she could not go back to her job or her home until she acknowledged her guilt, she confessed, *is held* to show that the confession was involuntary, and the admission of the confession in evidence upon the court's finding that it was freely and voluntarily made entitles defendant to a new trial.

APPEAL by defendant from *Hatch, Special Judge,* and a jury, at the May Special Term, 1951, of ALAMANCE.

Criminal prosecution upon three consolidated indictments charging the defendant with the larceny of these moneys on these occasions: $100.00 on 15 September, 1949; $300.00 on 1 December, 1949; and $95.00 on 26 February, 1951.

According to the State's evidence, the sums mentioned disappeared from the home of their owner, Zacharias Toupoulas, in Burlington, North Carolina, on the days named. There was no testimony connecting the defendant, a Negro woman, with their disappearance except a confession allegedly made by her to W. P. Hilliard, a white police officer of Burlington.

When the State offered the confession in evidence, the defendant objected to its admission on the ground that it was involuntary. The presiding judge excused the jury, and heard Hilliard, a witness for the prosecution, and the defendant, a witness in her own behalf, testify as to the circumstances under which the confession was made. Except for a general assertion by Hilliard that he "did not make any threats against the defendant, or offer her any hope of reward, or put her in fear," there was no substantial conflict between the testimony given by these witnesses on the preliminary inquiry before the judge. It disclosed these occurrences:

On 27 February, 1951, Hilliard visited a private residence in Burlington where the defendant was employed as a maid, and charged her with taking the moneys from the home of Toupoulas. She stoutly protested her innocence. Although he had no warrant for her arrest and no reason-

able ground to believe her guilty, Hilliard thereupon compelled the defendant to accompany him to the police station in Burlington for the purpose, as he frankly conceded on the trial, of procuring from her a confession that she was guilty of the supposed larcenies. Upon their arrival at the station, Hilliard forced the defendant to submit to two searches of her person, one of which involved the removal of all her clothes in the presence of a female employee of the police department. The searches revealed that the defendant had no money in her custody except a single penny. Hilliard thereafter detained the defendant in a small room at the police station for five hours while he badgered her with accusations and questions relating to the alleged larcenies. The defendant persisted in her denial of guilt throughout this ordeal. Finally, however, Hilliard told the defendant, in substance, that she could not "go back on the job or home" until she acknowledged her guilt. The defendant thereupon confessed "that she had stolen money from Toupoulas on three different occasions: September 15, 1949, $100.00; December 1, 1949, $300.00; February 26, 1951, $95.00."

The presiding judge "found as a fact that the confession was made freely and voluntarily," and admitted it in evidence.

The defendant presented testimony before the jury tending to show that she was not connected in any way with the supposed larcenies.

The jury returned this verdict: (1) Guilty of larceny of $100.00 on September 15, 1949; (2) guilty of larceny of $95.00 on February 26, 1951; and (3) not guilty of larceny of $300.00 on December 1, 1949.

The court pronounced judgment against the defendant on the two indictments whereon she was adjudged guilty, and she appealed, assigning the admission of her confession as error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Charles G. Powell, Jr., Member of Staff, for the State.*

*C. J. Gates and M. E. Johnson for the defendant, appellant.*

ERVIN, J. An extrajudicial confession of guilt by an accused is admissible against him when, and only when, it is in fact voluntarily made. *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572. When the circumstances surrounding the confession in issue are appraised at their true probative value, they engender an abiding conviction that the confession was wrung from the defendant by coercion on the part of the officer, and particularly by his threat to deprive her of her personal liberty until she acknowledged her guilt. This being so, the confession was involuntary, and should have been excluded. *S. v. Brown,* 233 N.C. 202, 63 S.E. 2d 99; *S. v. Stevenson,* 212 N.C. 648, 194 S.E. 81; *S. v. Crowson,* 98 N.C. 595, 4 S.E. 143; *S. v. Parish,* 78 N.C. 492; *S. v. Dildy,* 72 N.C. 325; *S. v. Whitfield,* 70 N.C. 356; *S. v. George,* 50 N.C. 233.

Ministers of the law ought not to permit zeal for its enforcement to cause them to transgress its precepts. They should remember that where law ends, tyranny begins.

The admission of the involuntary confession constitutes prejudicial error, and necessitates a

New trial.