STATE OF NORTH CAROLINA v. RUDOLPH HINES, JAMES WILLIAM LEAK, GEORGE ALBERT McNEILL AND JIMMY LAWRENCE McNEILL.

(Filed 15 December, 1965.)

**1. Criminal Law § 87—**

Where several defendants are jointly charged with a crime committed by them in concert, their respective motions for a separate trial are addressed to the sound discretion of the trial court, and the court's denial of the motions will not be held for error in the absence of a showing of abuse of discretion.

**2. Criminal Law § 74—**

A declaration made by one defendant in the presence of the others in perpetrating the common offense is competent as against the other defendants.

**3. Criminal Law § 90—**

One defendant is not entitled to object to the admission in evidence of the confession of another defendant when the court restricts its admission to the question of the guilt of the defendant making it and instructs the jury not to consider it as against the others.

**4. Criminal Law § 151—**

Where the charge of the court is not set out in the record it will be presumed that the court correctly instructed the jury on every phase of the case, both with respect to the law and the evidence.

**5. Criminal Law § 122—**

The allowance or refusal of a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court.

**6. Same—**

Where it appears that defendant in question did not object to the introduction of the extrajudicial confessions of his codefendants, and it further appears that each confession was restricted to the defendant making it, and that the court's charge to the jury does not appear of record, the refusal of a motion for mistrial on the ground that the admission in evidence of the confessions of his codefendants was prejudicial will not be disturbed, it being presumed that the court correctly limited the admission of the confessions, and therefore, that there was no abuse of discretion in denying the motions.

**7. Criminal Law § 71—**

A voluntary confession is admissible in evidence, and the fact that the confession was made in the presence of an officer does not render it incompetent if the confession was, in fact, voluntary.

**8. Same—**

The trial court's findings of fact upon the *voir dire* with respect to the voluntariness of a confession are conclusive when supported by competent evidence, and therefore when the evidence supports the court's findings that defendants, respectively, were warned of their right not to make any statement, their right to counsel, and that any statement made by them might be used against them, and that their confessions were freely and voluntarily made without inducement or threat, the admission of the confessions, respectively, will not be held for error, even though there be evidence to the contrary.

**9. Same—**

The fact that a defendant was illegally held at the time he made a confession, standing alone, is not sufficient to render his confession, otherwise voluntary, incompetent as a matter of law. G.S. 15-47.

**10. Same—**

A statement by an officer to defendant that others, jointly indicted, had talked and said that they had gone to the store in question and robbed the proprietor, and that the officer wanted to know what defendant had to say about it, does not render defendant's ensuing confession involuntary as a matter of law, the statement by the officer being true.

**11. Same—**

The fact that counsel is not present when defendant makes a voluntary confession does not render the confession incompetent when it appears that the defendant had been advised of his right to have counsel and requested none.

**12. Same—**

The fact that one of the officers present at the time of the making of a confession was not examined upon the *voir dire* does not render the con-

fession incompetent when the defendant does not ask for permission to examine the officer.

APPEAL by defendants Rudolph Hines, James William Leak, George Albert McNeill, and Jimmy Lawrence NcNeill from *Copeland, S.J.*, April 1965 Criminal Session of WAKE.

Criminal prosecution on an indictment charging John Thomas Alston, Rudolph Hines, James William Leak, George Albert McNeill, and Jimmy Lawrence McNeill on 16 February 1965 with robbery with firearms, to wit, a pistol, of P. R. Gulley, a violation of G.S. 14-87.

At the time of the trial John Thomas Alston had not been arrested. Each of the other four defendants pleaded not guilty. Verdict: Rudolph Hines, James William Leak, George Albert McNeill, and Jimmy Lawrence McNeill are guilty of armed robbery as charged. Each of these four defendants through his court-appointed counsel asked that the jury be polled, and each juror said that his verdict is that the four defendants are guilty and that he still assents to such verdict.

From a separate sentence of imprisonment of each of the said four defendants, each defendant appeals.

*Attorney General T. W. Bruton and Staff Attorney Andrew A. Vanore, Jr., for the State.*

*Alton W. Kornegay for defendant appellant Rudolph Hines.*

*Charles H. Sedberry for defendant appellant James William Leak.*

*Carl C. Churchill, Jr., for defendant appellant George Albert McNeill.*

*John W. Liles, Jr., for defendant appellant Jimmy Lawrence McNeill.*

PARKER, J.  The State offered as one of its witnesses Joe Alston. This is a summary of his testimony, except when quoted: He is 26 years old and is a brother of John Thomas Alston, who is 25 years old. Between 8 and 8:30 p.m. on 16 February 1965 he, his brother John Thomas Alston, Rudolph Hines, James William Leak, George Albert McNeill, and Jimmy Lawrence McNeill met at a service station on South Street in the city of Raleigh. All six of them got into George Albert McNeill's automobile. They rode down Highway #401 to its intersection with Highway #70, then they went down Highway #70 to the town of Garner, and then went out on Highway #50. A store operated by P. R. Gulley is just off Highway #50. They rode by Gulley's store, turned around, came back, and

stopped about two blocks from the Gulley store. "We did not have any discussion as to what we were going to do at Mr. Gulley's store, except I heard someone say we were to go to pick up a piece of change. I asked them on the way down there after we got in sight of the place if there was going to be a robbery." When they stopped near Gulley's store they had a flat tire. Rudolph Hines, James William Leak, Jimmy Lawrence McNeill, and his brother got out of the automobile and went towards the Gulley store, leaving George Albert McNeill and himself at the automobile. Someone came back with a jack, and he and George Albert McNeill changed wheels on the automobile. A few minutes later, his brother, Rudolph Hines, James William Leak, and Jimmy Lawrence McNeill came back to the automobile, and one of them had an article that looked like a cash register tray. "I did not see any money but I did hear some change." All six of them got in the automobile and they went back to Raleigh, where he got out of the automobile and went home. "I didn't receive any money, nor did I ask for any because I wasn't in on the deal."

This is a summary of the testimony of P. R. Gulley, a witness for the State, except when quoted: His store is about four miles south of Garner just off Highway #50. It is primarily a sausage business, and he keeps drinks, nabs, and candy for sale. About 9 p.m. on 16 February 1965 he was alone in his store working with his sausage and getting some ready for sale. He heard an automobile stop to the left of his store. Shortly thereafter two Negro men came in, said they had a flat tire, and asked if he had a jack, as they did not know if their old jack would work. He replied that he had an old jack in his truck parked in front of the front door. They bought drinks, talked a few minutes, and left. Shortly thereafter they came back and wanted his jack. He went outside to his truck, got his jack, came back in the store, and gave it to them. They left. He went back to work on his sausage. Pretty soon two Negro men came in and wanted change for a dollar. He did not have sufficient change in his pocket. He went to his cash register, which had hung up the Saturday before, took the tray out of the cash drawer, and set it up on a shelf. He took fifty cents out of the tray and fifty cents out of his pocket, and gave them change for a dollar. They went out of the store. He went to a counter at the end of his store and began working on his sausage. Three of the Negro men came back in the front door of the store. It was cold, and they went and stood by the heater. The same man, who bought drinks before, bought another drink. He told them he did not sell cigarettes. They stood around the heater talking. He went back to his sausage work. The next thing he knew one of them, who he learned later was John

Thomas Alston, stepped from behind his refrigerator with a pistol, and said, "this it it." (The court instructed the jury that the statement, "this is it," should be considered only against defendants James Leak and Rudolph Hines and that they should not consider it as against George Albert McNeill and Jimmy Lawrence McNeill.) Then another of the Negroes, whom he identified in the courtroom, and who is James William Leak, grabbed him around the body. Gulley testified: "My meat block was sitting there. The defendant James Leak comes in between myself and the meat block and grabs hold right around me, this way, right around my body and when he done that, this boy here, Rudolph Hines, comes behind the meat block I think. He comes right up behind me and starts in my pocket in my hip pocket and side pockets and among the two they went all over me, taken everything in my pockets out, pocket knife, keys, billfold, check books, even cleaned this pocket up here. When I said between the two, I am referring to James Leak and Rudolph Hines. Alston was holding the pistol on me. They took everything on me. They dropped one key on the floor that they didn't pick up. I had some money in my billfold. Best I can figure there was around $100.00 or little better in my pockets and in my cash drawer, they got it both. I had around $85 or $90 in my pocket." When they finished going through his pockets, John Thomas Alston, with the gun, stepped to the right and said, "Come out the front door." The back door was open, and he saw another man over that way, but he could not afford to turn and look, when Alston said, "Come out the front door." That man was over in the vicinity where his cash drawer was on the shelf on the right side. He went out the front door with his hands up. Alston told him to drop his hands. He then trotted to a neighbor's house and told his wife to call the sheriff, that he had been robbed. From there he ran home.

The State offered in evidence an extrajudicial confession made by George Albert McNeill to Deputy Sheriffs W. D. Chalk and K. W. O'Neal to this effect: He, James William Leak, Jimmy Lawrence McNeill, Rudolph Hines, John Thomas Alston, and Joe Alston were in an automobile at the home of Joyce McNeill. They drove out on Highway #50 to P. R. Gulley's store where they had a flat tire. They went in his store and borrowed his jack. They carried the jack back in the store, and at that time John Thomas Alston held a pistol on Gulley and they proceeded to take his billfold from his pocket, to empty his pockets, and they also took his cash drawer from on top of the counter, and went back to the automobile. They had planned to go out and rob Gulley's store. John Thomas Alston had mentioned the Swift Creek Grocery, but when they reached it they did

not stop because so many people were there. They left Gulley's store and drove back to Raleigh. Someone threw the cash drawer out the window of the automobile at a bridge in a curve of the road. The court instructed the jury that George Albert McNeill's statement was not to be considered in any way by them against Rudolph Hines.

The State offered in evidence an extrajudicial confession made by Jimmy Lawrence McNeill to Deputy Sheriffs W. D. Chalk and K. W. O'Neal to this effect: He admitted being with them in the robbery. He said he got between $11 and $12, and that John Thomas Alston had the pistol. The court instructed the jury that Jimmy Lawrence McNeill's statement was not to be considered in any way by them against Rudolph Hines.

The State offered in evidence an extrajudicial confession made by James William Leak to Deputy Sheriffs W. D. Chalk and K. W. O'Neal to this effect: He got between eleven and twelve dollars. The money was divided at John Thomas Alston's sister's house. He, Joe Alston, George Albert McNeill, Jimmy Lawrence McNeill and Rudolph Hines were in the automobile. John Thomas Alston had the pistol, and he went into the store. The court instructed the jury that Leak's statement was not to be considered in any way by them against Rudolph Hines.

Deputy Sheriff W. D. Chalk testified as follows: "While each of the defendants Jimmy Lawrence McNeill, James Leak and George McNeill was making these statements, neither of the other two denied any statement made by the other. It was just a general conversation, they all laughing about it and telling again how it happened, how they got together and how they went down to Mr. Gulley's store. Either Deputy Sheriff O'Neal or I had talked to each of them individually before I had the three of them together and they were giving this discussion."

Defendant Hines made no extrajudicial statement.

The defendants offered no evidence, except that defendants Leak and the two McNeills testified in the absence of the jury on the preliminary inquiry as to the competency or incompetency of the extrajudicial confessions made by each one of them.

When the case was called for trial on the joint indictment here, each of the four defendants moved for a separate trial. The court denied the motions, and each defendant assigns it as error, except defendant George Albert McNeill, who states in his brief that he abandons this assignment of error by him. The granting or refusing of the motion for a separate trial by each of the four defendants was a matter which rested in the sound discretion of the trial court.

No abuse of discretion appears on the present record. The defendants were charged in a joint indictment with being partners in crime, and they were tried together as his Honor evidently thought was meet and proper. The assignment of error by each defendant, Hines, Leak, and Jimmy Lawrence McNeill is not sustained. *S. v. Anderson,* 208 N.C. 771, 182 S.E. 643; 1 Strong's N. C. Index, Criminal Law, § 87, p. 757, Strong's Supplement to Vol. 1, Criminal Law, § 87. *S. v. Bonner,* 222 N.C. 344, 23 S.E. 2d 45, is factually distinguishable.

### APPEAL BY RUDOLPH HINES

Hines has five assignments of error. His first assignment of error is to the denial of his motion for a separate trial. That has not been sustained, as stated above.

Hines' second assignment of error is to the overruling of his objection to a few words of Gulley's testimony. In his brief he cites no authority to support this assignment of error, which is totally without merit, and it is overruled.

Hines' third assignment of . error is to the overruling of his objection to Alston's statement to Gulley, "Come out the front door," made immediately after defendants Leak and Hines had finished going through Gulley's pockets. This declaration of John Thomas Alston uttered in furtherance of the common, illegal design of himself, Hines, and the others to rob Gulley, and uttered in Hines' immediate presence is clearly admissible against Hines. *S. v. Gibson,* 233 N.C. 691, 65 S.E. 2d 508; *S. v. Ritter,* 197 N.C. 113, 147 S.E. 733. This assignment of error is overruled.

Defendant Hines' fourth assignment of error is the denial of his motion for a mistrial made at the close of the State's evidence, and his fifth and last assignment of error is the denial of a similar motion made by him at the conclusion of all the evidence. The last assignment of error is superfluous, because defendants offered no evidence other than on the preliminary inquiry as to the competency or incompetency of the extrajudicial confessions, and at the close of the State's evidence no further evidence was offered. The defendant contends that his motions for a mistrial should have been allowed, because though the trial court instructed the jury that the confessions of the other three defendants should not be considered in any way by the jury against him, the admission of the confessions of these three defendants prejudiced him.

So far as the record before us discloses, defendant Hines did not object to the admission in evidence of the confessions of his three codefendants James William Leak, George Albert McNeill, and

Jimmy Lawrence McNeill. When the trial judge allowed the State to present in evidence as against Leak, George Albert McNeill, and Jimmy Lawrence McNeill extrajudicial confessions made by each of them, he instructed the jury with particularity as to each extrajudicial confession by each of these defendants that it was not to be considered in any way against the defendant Hines.

The applicable rule is stated in *S. v. Kerley,* 246 N.C. 157, 97 S.E. 2d 876, as follows:

> "Where two or more persons are jointly tried, the extrajudicial confession of one defendant may be received in evidence over the objection of his codefendant(s) when, *but only when,* the trial judge instructs the jury that the confession so offered is admitted as evidence against the defendant who made it but is not evidence and is not to be considered by the jury in any way in determining the charges against his codefendant(s). *S. v. Bennett,* 237 N.C. 749, 753, 76 S.E. 2d 42, and cases cited. While the jury may find it difficult to put out of their minds the portions of such confessions that implicate the codefendant(s), this is the best the court can do; for such confession is clearly competent against the defendant who made it."

It is true that the trial judge did not instruct the jury that each of the three extrajudicial confessions is admitted in evidence against the defendant who made it, but is not evidence against defendant Hines. The charge of the court to the jury is not in the record. "Where the charge of the court is not in the record, it will be presumed that the court correctly instructed the jury on every phase of the case, both with respect to the law and evidence." 1 Strong's N. C. Index, Appeal and Error, § 35, p. 112. The allowance or refusal of a motion for a mistrial in a criminal case less than capital rests largely in the discretion of the trial court. *S. v. Humbles,* 241 N.C. 47, 84 S.E. 2d 264; 2 McIntosh, N. C. Practice and Procedure, 2d Ed., § 1548; 88 C.J.S., Trial, § 36, b, p. 96-97; 53 Am. Jur., Trial, § 967. Considering the fact that defendant Hines did not object to the introduction in evidence of the extrajudicial confessions of defendants Leak, George Albert McNeill and Jimmy Lawrence McNeill, and indulging the presumption that the trial judge correctly instructed the jury on every phase of the evidence, and that the trial judge instructed the jury with particularity as to each of the three extrajudicial confessions of defendants Leak and the two McNeills, that each of these three extrajudicial confessions was not to be considered in any way by the jury against defendant Hines, it does not appear that the trial judge abused his discretion in deny-

ing Hines' motions for a mistrial. These assignments of error are overruled.

As to the trial of defendant Hines, we find

No error.

### APPEAL BY GEORGE ALBERT McNEILL

This defendant has two assignments of error, the first of which is to the denial of his motion for a separate trial. He states in his brief that he abandons this assignment of error.

His second assignment of error is: The court below erred in its findings of fact and ruling that the alleged confession by him was free and voluntary on his part, and that he was not being illegally detained at the time of the confession, and in admitting into evidence over his objection the alleged confession.

When the admissibility of a purported extrajudicial confession by George Albert McNeill was challenged by him, the trial judge had the jury to leave the courtroom and conducted in the absence of the jury a lengthy preliminary inquiry showing the circumstances under which the purported confession was made. The State offered the testimony of Deputy Sheriffs W. D. Chalk and K. W. O'Neal, and defendant George Albert McNeill testified in his own behalf, all of whom were examined and cross-examined at length by counsel for the State and for defendant George Albert McNeill.

The State's evidence was to this effect: Between 8 and 9:30 p.m. on 25 February 1965 Deputy Sheriffs Chalk and O'Neal went to the home of George Albert McNeill in the city of Raleigh and asked him to go with them to the detective bureau so they could talk with him. McNeill did not object to going. The officers had information a felony had been committed, and they picked McNeill up as a suspect for questioning. They handcuffed him and went to the detective bureau. Upon arrival at the detective bureau, Chalk, before McNeill made any statement, told him he did not have to tell him, Chalk, anything, that if he said anything it could be used for or against him, and that he had a right to call a lawyer if he wanted one. A telephone was in the room. McNeill said nothing about calling a lawyer. He did not ask for permission to call his mother. P. R. Gulley came and looked at McNeill. McNeill was not told what he was suspected of having committed when picked up. Before he made a confession he was told he could be arrested for armed robbery of Gulley. In answer to the officers' questions, McNeill made the confession set forth above. After McNeill confessed, a warrant was sworn out against him, and he waived a preliminary hearing that night.

Defendant McNeill's testimony is in substance: He is 21 years old. When officers Chalk and O'Neal came to his home and said they wanted to carry him uptown, they did not tell him why they wanted to do so. He asked the reason why, and O'Neal replied, "I'll tell you when I get you uptown." They handcuffed him. They did not mention there his constitutional rights. On the way uptown, O'Neal asked him did he know those boys. They carried him to the police station and put him in a little room. He asked to use a telephone to call his mother, and they would not let him. He did not ask for a lawyer. Nothing was said to him about having a lawyer. After the officers questioned him, he telephoned his mother. He never told the officers he robbed Gulley or participated in the robbery of Gulley. John Thomas Alston had him to carry him to Garner to see his, Alston's, grandmother. At Gulley's store he had a flat tire and fixed it. He brought Alston back to Raleigh. Alston paid him $12 for the trip. He does not know where Alston got the money. He did not confess to anything. Jimmy Lawrence McNeill, James Leak, and John Thomas Alston were with him on the trip. He did not say Rudolph Hines was with them. No officer told him he did not have to answer questions, and that if he said anything it could be used for or against him in court. He testified: "I went to school to the tenth grade. No one threatened me that night not as I recall. They were real nice to me."

The trial judge made the following findings of fact in respect to his extrajudicial confession: On the night in question prior to any interrogation by the officers and prior to discussing the matter with him, they warned the defendant that he did not have to make a statement, but that if he did make a statement it could be used for or against him later. He was also advised that he could use the telephone if he wished. That defendant made no request to call any of his people at that time or to call an attorney at that time. The warrant was served on him within a matter of a few hours, and thereupon he waived a hearing and bond was set. Prior to that time defendant made certain statements to Deputy Sheriffs Chalk and O'Neal, and that on all occasions there were no threats made to said defendant of any kind, either physical or mental, and neither was he physically or mentally punished at any time prior or during the making of such statements, and that there was no hope of reward or threat of punishment. He was permitted to call his mother at least thirty minutes to an hour prior to his waiving a hearing in the magistrate's court. Defendant is a person of substantial education, having completed the tenth grade. The court concludes that

the statements made by defendant to officers Chalk and O'Neal were free and voluntary in every respect.

Since *S. v. Roberts,* 12 N.C. 259, this Court has uniformly held that voluntary statements made by a defendant are admissible in evidence. *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *S. v. Painter,* 265 N.C. 277, 144 S.E. 2d 6. The mere presence of officers does not render a confession incompetent. 1 Strong's N. C. Index, Criminal Law, § 71, p. 733. This Court said in· *S. v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344:

> "In the establishment of a factual background by which to determine whether a confession meets the tests of admissibility, the trial court must make the findings of fact. When the facts so found are supported by competent evidence, they are conclusive on appellate courts, both State and Federal. *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847; *State v. Davis,* 253 N.C. 86, 116 S.E. 2d 365; *certiorari denied,* 365 U.S. 855; *Watts v. Indiana,* 338 U.S. 49; *Lyons v. Oklahoma,* 322 U.S. 596; *Lisenba v. California,* 314 U.S. 219. Of course, the conclusions of law to be drawn from the facts found are not binding on the reviewing courts. In *Watts,* the principle is stated concisely: '(I)n all the cases which have come here . . . from the courts of the various states in which it was claimed that the admission of coerced confessions vitiated convictions for murder, there has been complete agreement that any conflict in testimony as to what actually led to a contested confession is not this Court's concern. Such conflict comes here authoritatively resolved by the State's adjudication.' "

The trial judge's findings of fact are amply supported by the evidence. Defendant himself testified: "No one threatened me that night not as I recall. They were real nice to me." And upon his findings of fact his Honor properly drew the legal conclusion that this defendant's extrajudicial confession was made freely and voluntarily. Consequently, the extrajudicial confession of guilt by this defendant was properly admitted in evidence against him. *S. v. Warren,* 235 N.C. 117, 68 S.E. 2d 779, and *Gallegos v. State of Colorado,* 370 U.S. 49, 8 L. Ed. 2d 325, 87 A.L.R. 2d 614, relied on by defendant, are factually distinguishable.

Defendant contends the trial judge erred in concluding as a matter of law that this defendant was not illegally held at the time he made the extrajudicial confession. Defendant contends he was illegally held at the time he made the confession because of the provisions of G.S. 15-47. Even if this defendant was being illegally

held at the time he made the confession, which we do not admit, that fact taken singly, under the facts here, is not sufficient to render his confession, otherwise voluntary, involuntary as a matter of law and incompetent as evidence. The statute does not so provide. *S. v. Exum,* 213 N.C. 16, 195 S.E. 7; *S. v. Brown,* 233 N.C. 202, 63 S.E. 2d 99.

Defendant's second and last assignment of error is overruled.

In the trial of George Albert McNeill, we find

No error.

### APPEAL BY DEFENDANTS JAMES WILLIAM LEAK AND JIMMY LAWRENCE McNEILL

When the trial court finished a long preliminary inquiry in the absence of the jury showing the circumstances under which the extrajudicial confession of George Albert McNeill was made, it continued the preliminary inquiry in the absence of the jury showing the circumstances under which the purported extrajudicial confessions by Leak and Jimmy Lawrence McNeill were made.

Leak and Jimmy Lawrence McNeill each have three assignments of error, and they are identical. The first assignment of error by each of them is to the denial of his motion for a separate trial, which motion by each defendant has not been sustained, as stated above.

The second assignment of error of Leak is that the trial court erred in finding and concluding that his extrajudicial confession was free and voluntary on his part, and in admitting it in evidence over his objection against him. Jimmy Lawrence McNeill's second assignment of error is identical with Leak's.

Deputy Sheriff K. W. O'Neal was examined at length by counsel for Leak, and then by counsel for the State. This is a summary of his testimony: O'Neal, Deputy Sheriff W. D. Chalk, and other officers between 8 and 9 p.m. on 25 February 1965 went to a girl's house in Raleigh, found Leak hiding behind a refrigerator and carried him handcuffed to the detective bureau for questioning. Upon arrival at the detective bureau, he locked Leak in a small room there and kept him there alone for about 45 minutes before he came back to talk with him. At that time no warrant had been taken out for his arrest. In the meantime John Thomas Alston, Jimmy Lawrence McNeill, and George Albert McNeill had been picked up, were in separate rooms at the detective bureau, and had been questioned. When he went to talk to Leak, before questioning him, he told Leak he had a right not to say anything, and that anything he said could be used against him. Leak made no request to use the telephone or

any other request. He told Leak the persons he had talked to said they had gone down to Gulley's store and had robbed him, and he wanted to know what he, Leak, had to say about it. He had already talked to John Thomas Alston and George Albert McNeill, and they had confessed to the robbery of Gulley. Then Leak made the confession later admitted in evidence over Leak's objection. Deputy Sheriff Chalk was present when he talked to Leak. After this a warrant was taken out against Leak for the robbery here, and before 11 p.m. the same night he waived a preliminary hearing.

After O'Neal testified, Leak testified in his own behalf. We summarize the relevant parts of his testimony: He is 18 years old. He was taken by the officers and carried to the detective bureau about 8:30 p.m. and placed in a small room, where he was kept for about 45 minutes. He was not asked if he wanted to call his family or a lawyer or anyone. While in this room alone he heard a conversation in the next room between detective Bowers and Jimmy Lawrence McNeill. He recognized their voices. McNeill kept saying he did not know anything about it. Bowers was using profanity and saying that if McNeill did not sign he was going to hit him "side his head." When Deputy Sheriff O'Neal came into the room where he was, O'Neal asked his name and address, and told him he did not have to tell him anything because he had already been with those other boys in the room, so he did not have to tell him anything if he did not want to. O'Neal told him the other boys said he was with them in the robbery of Mr. Gulley. He said again that he, Leak, did not have to tell him anything if he did not want to. He told O'Neal he had been with the boys on the night of the alleged robbery. He did not tell him there had been a robbery. He did not know there had been a robbery. He did not ask O'Neal to do anything for him. He did not ask O'Neal to let him do anything. He did not ask O'Neal to use the telephone or to call a lawyer or to talk to a lawyer. He did not tell O'Neal he got part of the money. He told O'Neal he went down to Gulley's store but he did not go in the store. He did not tell the officers that Rudolph Hines carried the money tray out of the store, and he did not tell O'Neal that they went back to John Thomas Alston's sister's house and divided the money. He did not tell O'Neal that Alston had a pistol. O'Neal did not hit him. He threatened to hit him, but he did not.

After Leak had testified, O'Neal was recalled to the stand and testified in substance as follows: He did not threaten Leak and did not hit him.

After the preliminary inquiry in the absence of the jury in respect to the extrajudicial confession of Leak was finished, the trial

court then proceeded with the preliminary inquiry in the absence of the jury showing the circumstances under which the purported extra-judicial confession of Jimmy Lawrence McNeill was made. Deputy Sheriff K. W. O'Neal was examined by Jimmy Lawrence McNeill's attorney and also by counsel for the State. This is a summary of his testimony: About 8 p.m. on 25 February 1965 he and other officers carried McNeill handcuffed from his home in the city of Raleigh to the detective bureau. McNeill at the detective bureau was placed in a room near Leak. City officers Bowers and Haley talked to McNeill before he did. Before talking to McNeill about the robbery of Mr. Gulley, he told him, McNeill, he did not have to say anything, and if he did make a statement it might be used against him in court. McNeill did not ask to use the telephone or to call any member of his family or to call a lawyer or anyone. He did not threaten McNeill or offer to hit him. McNeill made the confession to him which was afterwards admitted in evidence over his objection against him.

Jimmy Lawrence McNeill on the preliminary inquiry testified in his own behalf. This is a summary of its relevant parts, except when quoted: He was carried to the detective bureau and placed in a room by himself for 45 or 50 minutes. Detective Bowers came in and asked him about the Gulley robbery. He told him he did not know anything about it. Bowers kept on questioning him and said, "You going to, all the rest of the boys done confessed I was with them." He told Bowers he was in George Albert McNeill's automobile, but he did not know anything about the robbery. Then Bowers went to reading some things Joe Alston had told him. Bowers talked to him about two cases. He tried to make him sign a piece of paper. He cussed him and told him what he would do to him if he did not sign it. "He told me he would hit me side of the head if I didn't sign it. He was talking real loud. He scared me when talking about fighting. Yes, he is a big man. He did not hit me. He was cussing." He talked with both of the deputy sheriffs. Neither one of them threatened him. The detectives were not present when the deputies talked to him. He never told them he robbed Mr. Gulley. He testified: "Whatever I told the deputies was voluntary on my part. They didn't force me to say anything. . . . They were questioning me about the Gulley robbery. The only thing I said about the Gulley robbery was that I was in the car but I didn't know whether anybody robbed the man or not." He told them he was drunk in the automobile. He is 19 years old and has completed the tenth grade.

After McNeill had testified, detective J. H. Bowers testified as

a witness and was examined and cross-examined by counsel for the State and by counsel for McNeill. This is a summary of the relevant parts of his testimony: During the time he talked with McNeill in a room in the detective bureau of the municipal building, he did not threaten him or offer to hit him .or tell him he was going to hit him if he did not confess. He questioned him about a crime committed in the city of Raleigh. He did not speak loud or use any profane or abusive language. He wrote down what McNeill said as to the part he played in the commission of the crime within the city of Raleigh, which had nothing to do with the Gulley robbery. Prior to talking to McNeill, he warned him of his rights and told him to call his folks if he wanted to. He also told him he did not have to make any statement, and that if he made one it could be used against him at a later date.

After Jimmy Lawrence McNeill's confession, a warrant was taken out against him for the robbery here, and before 11 p.m. the same night he waived a preliminary hearing.

The trial judge found as facts, *inter alia*, that Leak and Jimmy Lawrence McNeill were each told by the officers that he did not have to make a statement or answer questions unless he desired to do so, and if he did, anything he said could be used later for or against him, that each one of them was not threatened in any way, and he concluded as a matter of law that the confession of each was free and voluntary on his part. These findings of fact above stated are amply supported by the evidence.

Leak contends his confession is vitiated because Deputy Sheriff O'Neal testified he told him the persons he had talked to said they had gone down to Gulley's store and had robbed him, and he wanted to know what he, Leak, had to say about it. He relies upon *S. v. Anderson, supra.* The *Anderson* case is easily distinguishable, in that in this case defendant Overman successfully contended his confession was involuntary because the following appeared from the testimony of D. P. Stewart, a State's witness: "I think I told him some of the ones in jail had talked and would talk and he might as well do likewise. . . . It was not true that anyone in jail had talked. . . . I believe I told him it would be better for him to go ahead and tell it just like it was and he might as well go ahead and tell it because it was already told." In the instant case it appears that what O'Neal told Leak was true. This statement by O'Neal to Leak under the facts here does not vitiate Leak's confession. See *Jackson v. State,* 180 Md. 658, 26 A. 2d 815; 3 Wigmore on Evidence, 3d Ed., § 841(1); 2 Wharton's Criminal Evidence, 12th Ed. by Anderson, § 385.

Defendants Leak and Jimmy Lawrence McNeill contend their confessions should have been excluded upon authority of *Massiah v. United States*, 377 U.S. 201, 12 L. Ed. 2d 246, and *Escobedo v. Illinois*, 378 U.S. 478, 12 L. Ed. 2d 977. In the *Escobedo* case the accused during interrogation by the officers had repeatedly and in terms asked to see a previously retained lawyer who was in the building when he was being interrogated, and was refused, and in addition the accused was not warned, as were Leak and Jimmy Lawrence McNeill here, of his constitutional right to remain silent. Neither Leak nor Jimmy Lawrence McNeill requested counsel. We do not interpret *Escobedo* to mean that counsel must immediately be afforded one taken into custody before he is interrogated by officers, under all circumstances, particularly where no counsel is requested, as in the instant case. In our view the *Escobedo* case does not control here. In support of our opinion as to the *Escobedo* case, see *People v. Hartgraves*, 31 Ill. 2d 375, 202 N.E. 2d 33 (1964); *Anderson v. State*, 237 Md. 45, 205 A. 2d 281 (1964); *Swartz v. State*, 237 Md. 263, 205 A. 2d 803 (1965); *Bean v. State (Nev.)*, 398 P. 2d 251 (1965); *Pece v. Cox*, 74 N.M. 591, 396 P. 2d 422 (1964); *Commonwealth v. Patrick*, 416 Pa. 437, 206 A. 2d 295 (1965); *Browne v. State*, 24 Wis. 2d 491, 131 N.W. 2d 169 (1964). The facts in the *Massiah* case are utterly different from the facts here. In *Massiah*, defendant, after being indicted with other persons for violating the federal narcotics laws, retained a lawyer, pleaded not guilty, and was released on bail. While free on bail, the defendant held a conversation in the absence of his counsel with one of his codefendants while sitting in the latter's automobile, unaware that the codefendant, cooperating with government agents, had allowed the installation of a radio transmitter under the front seat of the automobile, by means of which a federal agent listened to the conversation. A majority of the court held that this conversation could not constitutionally be used against him. In our opinion the instant case does not come within the sweep of the *Massiah* decision.

The trial court properly admitted in evidence Leak's extrajudicial confession against him, and Jimmy Lawrence McNeill's extrajudicial confession against him.

The third and last assignment of error by Leak is that the trial court erred in finding as a fact and concluding that the confession made by him was voluntarily made without any *voir dire* examination of Deputy Sheriff Chalk on behalf of him, Leak. Jimmy Lawrence McNeill's last and third assignment of error is identical. The record shows that Chalk was in the courtroom during the trial,

BANK *v.* HACKNEY.

because he testified during the preliminary inquiry in the absence of the jury, and later as to the confessions. Neither Leak nor Jimmy Lawrence McNeill asked for permission to examine him. These assignments of error by them are overruled.

In the trial of James William Leak and Jimmy Lawrence McNeill, we find

No error.

The final result is in the trial of the four defendants here we find

No error.