STATE OF NORTH CAROLINA v. PERVA ALEXANDER HERRING
ALIAS PERVA MACKEY

No. 94

(Filed 12 December 1973)

Criminal Law § 75— statements of defendant — voluntariness

 Where a police officer first advised defendant of his rights without any interrogation, read the warrant charging defendant with armed robbery to which defendant replied, "I took the money," and read the warrant charging defendant with rape to which defendant replied, "It won't like that, nope it won't like that," the trial court properly concluded that defendant's statements did not result from interrogation, but were volunteered and legally admissible in evidence.

APPEAL by defendant from *Braswell, J.,* August 6, 1973 Criminal Session, CUMBERLAND Superior Court.

The defendant, Perva Alexander Herring, alias Perva Mackey, was charged by grand jury indictments with rape and armed robbery. The indictment in No. 73 CR 3817 charged the capital felony of rape committed upon the body of Patricia Moore, a female. The indictment in No. 73 CR 3818 charged the felony of armed robbery of Patricia Moore. The offenses were alleged to have been committed on January 10, 1973.

The record of the case on appeal shows the proper organization of the court, Judge E. Maurice Braswell presiding; valid grand jury indictments; appointment of Neill Fleishman and Sol Cherry as counsel following a showing of defendant's indigency; his arraignments; and pleas of not guilty.

At the August 6, 1973 Criminal Session, the defendant, through his counsel, entered pleas of not guilty. The two charges were consolidated for trial without objection. A jury satisfactory to both the State and the defendant was selected and empaneled.

At the trial, Mrs. Patricia Moore was examined as a witness for the State. She testified that between 7:30 and 8:00 o'clock on the evening of January 10, 1973, she left the place where she worked for an insurance company, taking with her the sum of $262.00 of the company's money for deposit in the bank the following morning. She picked up her thirteen-month-old son at the nursery and while she was driving home, her automobile stalled in the snow. The defendant and Mr. Harris, both of whom were strangers, assisted her in moving her auto-

mobile up the incline. They followed her in Harris' automobile until she arrived at her apartment.

Mrs. Moore parked her automobile and entered her apartment carrying her son. About ten minutes later the defendant entered the apartment and requested permission to use the telephone. After his attempt to complete his call failed, the defendant then assaulted the witness, striking her a number of violent blows about the head and face and by force and against her will, committed the crime of rape. He then seized the $262.00 which her employer had entrusted to her for deposit in the bank. The plaintiff called on her neighbors for help. Mrs. Williams, as a witness for the State, testified that she saw Mrs. Moore and the defendant at the apartment, that Mrs. Moore was very upset, was crying, her nose was bleeding, and her eyes were bloody. The defendant claimed to Mrs. Williams that Mrs. Moore had fallen in the bathtub. When the witness called him by name, he ran. It appears by inference he went to the State of Washington.

The parties stipulated that Dr. Equez, who was then on vacation, examined Mrs. Moore on the morning of January 11, 1973, and found that she had two black eyes and several bruises on the face and neck. One of her teeth was missing. The microscopic examination disclosed the presence of sperm.

The arresting officer, Mr. F. M. Boone, testified that he obtained warrants for the arrest of the defendant on the charges of rape and robbery. Before serving the warrants he advised the defendant fully as to his rights and obtained the defendant's signature to a written statement that he had been so advised. When Officer Boone, without asking any questions, read the warrant charging robbery, the defendant volunteered this statement: "I took the money." When the officer then read the warrant charging rape, the defendant volunteered this statement: "It won't like that, nope it won't like that."

After a voir dire hearing the court concluded the defendant's statements as above disclosed were freely and voluntarily made, were admissible, and permitted the State to offer them in evidence over defendant's objection.

The court overruled motions to dismiss. The defendant testified as a witness in his own behalf. He admitted going to Mrs. Moore's apartment, stayed for some time, drank some beer, and

that Mr. Harris left. Thereafter, he remained and engaged in an act of sexual intercourse with Mrs. Moore's consent.

The defendant's mother testified that the defendant left Fayetteville to go visit his father in the State of Washington and that she wrote to him to come back after she found out that he was being sought by the officers.

The defendant's other witness, Ruth Brown, testified without objection that the defendant told her over the telephone that, "[H]e was going with a girl in Colony Place and that her name was Pat."

On rebuttal the State called Mr. Harris who testified that he and the defendant helped Mrs. Moore get up the hill with her automobile and followed in his car until she got home safely and entered the house. The witness left the defendant near Mrs. Moore's apartment and went home. He did not enter the apartment.

The court overruled defendant's renewed motion to dismiss. The jury returned these verdicts: In Case No. 73 CR 3817, "We find the defendant guilty of rape." In Case No. 73 CR 3818, "We, the jury, find the defendant guilty of common law robbery." The jury was polled at the defendant's request. The poll verified the verdicts which the court accepted.

The court imposed a sentence of life imprisonment on the charge of rape and a sentence of ten years in prison on common law robbery, the latter to begin at the expiration of the former. The defendant excepted and appealed. This Court allowed certiorari to the superior court on the charge of robbery to the end that the appeals be considered together.

*Robert Morgan, Attorney General, by H. A. Cole, Jr., Assistant Attorney General, for the State.*

*Sol G. Cherry, Public Defender, for the defendant.*

HIGGINS, Justice.

The defendant's assignments of error involve the admissibility of the defendant's statements made to the officer at the time he served the warrants charging armed robbery and rape. The evidence on the voir dire disclosed, and the trial judge found, that Officer Boone first advised the defendant of his rights

without any interrogation and that after he read the warrant charging armed robbery, the defendant volunteered the information, "I took the money." When the warrant charging rape was read, the defendant said, "It won't like that, nope it won't like that."

The defendant did not offer evidence on the voir dire. The court found facts and properly concluded the statements did not result from interrogation, but were volunteered and legally admissible in evidence.

> "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

> \* \* \* \* \*

> "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit or warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

The foregoing is taken from *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602. See also *State v. Muse,* 280 N.C. 31, 185 S.E. 2d 214; *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541; *State v. Hines,* 266 N.C. 1, 145 S.E. 2d 363.

The defendant's motions to dismiss were properly denied. The evidence was ample to go to the jury and to sustain its verdicts. The judgments were within the limits fixed by law for the offenses for which the defendant was convicted. Error of law does not appear either in the trial or on the face of the record proper.

No error.